## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## (TAMPA DIVISION)

| | |
|---|---|
| **SIEMENS GAMESA RENEWABLE ENERGY A/S,** | |
| Plaintiff, | Case No. 8:20-cv-02281-MSS-SPF |
| v. | |
| **GENERAL ELECTRIC CO., and GE RENEWABLES NORTH AMERICA, LLC,** | |
| Defendants. | |

## DEFENDANTS' MOTION TO DISMISS
## OR, IN THE ALTERNATIVE, TO TRANSFER VENUE
## AND MEMORANDUM OF LAW IN SUPPORT

Defendants General Electric Company ("GEC") and GE Renewables North America, LLC ("GERNA LLC") (collectively, "Defendants"), by and through their undersigned attorneys, hereby respectfully move to dismiss the Complaint filed by Plaintiff Siemens Gamesa Renewable Energy A/S ("SGRE") pursuant to Federal Rules of Civil Procedure 12(b)(3). In the alternative, Defendants respectfully move to transfer this case to the United States District Court for the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).

SGRE's complaint should be dismissed because venue is improper in this district. Contrary to SGRE's conclusory allegations, GEC does not have a regular and established place of business in the Middle District of Florida and GERNA LLC has no involvement with the offshore wind turbine products accused of infringement in this action. Furthermore, SGRE makes no allegation that either GEC or GERNA LLC has committed acts of infringement in this district, as the patent venue statute requires. Thus, SGRE cannot establish venue here and the complaint should be

1

dismissed.  In the alternative, Defendants ask the Court to, at minimum, transfer this case to the District of Massachusetts, where GEC is based, where SGRE's U.S. affiliate does business, and where witnesses and evidence relevant to the alleged infringement are more likely to be found.

## FACTUAL BACKGROUND

SGRE is a Danish corporation with a principal place of business in Brande, Denmark. Complaint for Patent Infringement ("Compl.") ¶ 2.  SGRE purports to own the rights, title, and interest in U.S. Patent No. 8,575,776 (the "'776 patent") and U.S. Patent No. 9,279,413 (the "'413 patent" and, collectively with the '776 patent, the "patents-in-suit").  *Id.* ¶ 4.  SGRE markets, sells, services, and provides operations and support for wind turbine products in the United States through its non-party affiliate, Siemens Gamesa Renewable Energy, Inc., a Delaware corporation that does business in Massachusetts.  *Id.*; *see also* William F. Galvin, *Business Entity Summary: Siemens Gamesa Renewable Energy, Inc.*, Massachusetts Secretary of State, https://www.sec.state.ma.us/.

Both of the patents-in-suit relate to technology for direct drive wind turbines.  Specifically, the '776 patent relates to a "wind turbine with an improved stator, which improves the operation of the wind turbine and simplifies the maintenance of the wind turbine."  Compl. ¶ 25.  The '413 patent relates to a purportedly "novel structural support arrangement for [wind] turbine[s] that enables wind turbines to be larger and/or handle increased loads, which in turn allows the wind turbine to generate more energy."  *Id.* ¶ 34.

SGRE alleges that both GEC and GERNA LLC conduct business that includes "designing, manufacturing, offering for sale and selling wind turbines and wind turbine components throughout the United States, including, but not limited to, manufacturing wind turbine products in Florida."  *Id.* ¶¶ 5-6.  The complaint alleges that both GEC and GERNA LLC maintain "offices and manufacturing facilities in Florida and this District, and [are] registered with the Florida

Department of State to do business in Florida," *Id.* ¶¶ 8-9, and have "committed acts of infringement in this District." *Id.* ¶ 10.

SGRE alleges that the purportedly infringing products are the "Haliade-X" series offshore wind turbines, including GEC's Haliade-X 12 MW and Haliade-X 13 MW wind turbines. *See, e.g.*, *id.* ¶¶ 20, 28-31, 43-44. SGRE's complaint identifies only two alleged Haliade-X 12 MW installations, one off the coast of Maryland and another off the coast of New Jersey. *Id.* ¶ 21. SGRE does not allege that any Haliade-X offshore wind turbines are manufactured, offered for sale, sold, or located in the Middle District of Florida. No other acts of infringement are alleged, and no other products are identified in the complaint.

Notably, in parallel litigation that SGRE filed against various General Electric entities in France asserting foreign counterparts to the patents-in-suit, SGRE included documentation confirming that the United States activity related to the accused Haliade-X offshore wind turbines was not in Florida. Specifically, in a section of its complaint identifying the entities alleged to be responsible for Haliade-X activity, SGRE included this excerpt from a GE slide presentation:



Figure 4 : Extrait de la présentation donnée par General Electric au Colloque 2020 de l'AQPER, diapositive 6 (page 11 de la pièce Siemens n° 7.1.3)

*See* Ex. C, *Summons on Behalf of Siemens Gamesa*, Paris Tribunal (October 2020) at 17 (hereinafter "*Summons*").  As the document that SGRE relied upon makes clear, no Haliade-X or other GE offshore wind turbine related activity occurs in Florida.  Rather, the only identified United States activity is in Foxborough, Massachusetts (in the District of Massachusetts) and Rhode Island.

## MEMORANDUM OF LAW

In an action for patent infringement, venue is proper either (1) "in the judicial district where the defendant resides" or (2) in the district "where the defendant has committed acts of infringement and has a regular and established place of business."  28 U.S.C. § 1400(b).  Courts construe the requirements of 28 U.S.C. § 1400(b) strictly.  *See Patent Holder LLC v. Lone Wolf Distribs., Inc.*, No. 17-23060-CIV, 2017 WL 5032989, at *5 (S.D. Fla. Nov. 1, 2017) (citing *Schnell v. Peter Eckrich & Sons, Inc.*, 365 U.S. 260, 264 (1961)).  In determining whether venue is proper, the court "must take the facts of a complaint as true only insofar as 'they are uncontroverted by defendant['s] affidavits.'"  *Lemoine v. Mossberg Corp.*, No. 18-CV-60902, 2018 WL 4905644, at *1 (S.D. Fla. July 26, 2018) (quoting *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990)) (alteration in original).  Neither GEC nor GERNA LLC "resides" in this district and, as the affidavits of Vincent Schellings, GE's Chief Technology Officer and General Manager of Product Management for Offshore Wind, and Scott Stalica, GERNA LLC's General Manager - North America Equipment Sales & Americas Commercial Operations, explain, the alleged acts of infringement did not occur in this district.  *See* Ex. A, Shelling Aff. ¶¶ 19-21; *see also* Ex. B, Stalica Aff. ¶¶ 12-16.

Where, as here, a case is filed in the improper venue, the court must either dismiss the action or transfer it to a jurisdiction with venue.  *Lemoine*, 2018 WL 4905644 at *2; 28 U.S.C. §

1406(a).   Defendants respectfully request that this Court dismiss the complaint, or in the alternative, transfer the complaint to the District of Massachusetts where venue is proper.

**I.     This Court Should Dismiss Plaintiff's Complaint for Improper Venue**

SGRE has failed to properly establish venue under either prong of 28 U.S.C. § 1400(b). Neither defendant resides in the Middle District of Florida, and SGRE has not pled facts sufficient to establish that either defendant has committed acts of infringement in the district.  The complaint must therefore be dismissed.

    A.     <u>The Defendants Do Not Reside in the Middle District of Florida</u>

The Supreme Court has made clear that for purposes of 28 U.S.C. § 1400(b), a defendant resides only in the location in which it is incorporated.  *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514, 1521 (2017).  It is undisputed that neither GEC nor GERNA LLC is incorporated in the Middle District of Florida.  *See* Compl. ¶¶ 5-6.  GEC is incorporated in New York, and GERNA LLC is incorporated in Delaware.  Venue therefore cannot be established based on the first prong of § 1400(b).

    B.     <u>Neither Defendant Has Committed Allegedly Infringing Acts in the District</u>

The second prong of § 1400(b) provides for venue "where the defendant has committed acts of infringement *and* has a regular and established place of business."  28 U.S.C. § 1400(b) (emphasis added).  Section 1400(b)'s "acts of infringement" element requires that it be "alleged that the defendant committed direct or indirect acts of infringement within the district."  *Univ. of S. Fla. Research Found. Inc. v. EIZO, Inc.*, No. 8:16-CV-3110-MSS-TGW, 2018 WL 4560524, at *3 (M.D. Fla. Jan. 2, 2018); *see also Structural Panels, Inc. v. Texas Aluminum Indus. Inc.*, 814 F. Supp. 1058, 1067-68 (M.D. Fla. 1993) (holding, in part, that venue in the Middle District of Florida was improper because "the alleged infringing activities occurred outside of Florida.").

SGRE summarily alleges that venue is proper "because GE is subject to personal jurisdiction in this District, GE has a regular and established place of business in this District, and on information and belief, GE has committed acts of infringement in this District."  Compl. ¶ 10. These arguments fail to establish venue.

Critically, SGRE has failed to allege that any acts of infringement took place in the Middle District of Florida.  SGRE has not alleged that either of the defendants maintains or manufactures **any** Haliade-X offshore wind turbines within this district.  It instead points to allegedly infringing Haliade-X installations in locations **outside** of this district, *see* Compl. ¶ 21, and makes the vague allegation that GE "manufactur[es] wind turbine products in Florida."  Compl. ¶¶ 5-6.  But SGRE does not allege that these other "wind turbine products in Florida" infringe its patents or, if they do, whether any infringing activity occurred within this district.

Nor could SGRE make such an argument.  The patents at issue in this case are directed to **direct drive** wind turbine technology which, for GEC, means its Haliade-X offshore wind turbines that operate in bodies of water such as the ocean.  *See* Ex. A, Schellings Aff. ¶ 15.  Offshore wind turbines are generally very large in size and have longer blades than onshore wind turbines that operate on land.  *See id.* ¶¶ 10, 14.  The longer blades allow offshore wind turbines to generate more power than a turbine with shorter blades.  *See id.* ¶ 10.  As an example, GE's Haliade-X 12 MW wind turbine has a height of 853 feet, a diameter of 722 feet, blades that are 351 feet long, and can generate 12 megawatts of power.  *See id.* ¶ 12.  The system components of these large offshore wind turbines are placed under tremendous stress.  *See id.* ¶ 11.  To limit the amount of stress and the need for repairs, offshore wind turbines use generators that employ "direct drive" technology.  *See id.* ¶ 13.  Direct drive technology uses fewer parts and generally requires less maintenance.  *See id.*  The patents at issue in this case are directed to specific aspects of a direct

drive wind turbine (namely, a stator and a rotor hub).  *See* '776 patent at 2:46 ("Generator 4 is of the direct-drive type"); '413 patent at 3:34 ("Preferably, the wind turbine is directly driven.").

SGRE's complaint points to the only wind turbine manufacturing facility in Florida[1]—the GERNA LLC facility in Pensacola.  That facility, however, is not involved with the accused Haliade-X offshore wind turbines.  *See* Ex. B, Stalica Aff. ¶ 11.  It is an "***onshore*** wind turbine machine head and hubs assembly facility."[2]  *See id.* ¶¶ 9, 12, 14.  GEC's onshore wind turbines are mechanically and materially different from its offshore wind turbines.  Instead of using direct drive technology, GEC's onshore wind turbines use generators that employ "geared" technology, which includes a gearbox and significantly more complicated configurations of components.  *See* Ex. A, Schellings Aff. ¶ 14.  Moreover, the "geared" onshore wind turbines, which are assembled in part at the GERNA LLC facility in Pensacola, are not at issue in this case.  SGRE has not alleged (and cannot allege) that those "geared" onshore wind turbine products infringe any claims of the patents-in-suit.

That is why SGRE's complaint focuses only on the Haliade-X ***direct drive offshore*** wind turbines.  *See* Compl. Ex. C at 1 (describing the Haliade-X 12 MW as "the most powerful offshore wind turbine in the world.").  But neither GEC nor GERNA LLC have manufactured, sold, tested, demonstrated, offered for sale, or otherwise used Haliade-X offshore wind turbines in Florida, let alone in this district.  *See* Ex. A, Schellings Aff. ¶ 19; Ex. B, Stalica Aff. ¶¶ 11-12.  And there is no reason to believe that anyone affiliated with either defendant (or their customers) would have tested, demonstrated, or otherwise used the Haliade-X offshore wind turbines in this district.  *See*

---

[1] *See* Florida Trend, *GE's Pensacola assembly plant advances wind power in Florida* (August, 26, 2019), https://www.floridatrend.com/article/27704/ges-pensacola-assembly-plant-advances-wind-power-in-florida#:~:text=GE's%20Wind%20Energy%20plant%20in,wind%20turbine%20manufacturer%20in%20Florida.
[2] *See* GE Renewable Energy Locations (last visited November 25, 2020), https://www.ge.com/renewableenergy/about-us/locations.

Ex. A, Schellings Aff. ¶ 19; Ex. B, Stalica Aff. ¶ 13.  SGRE itself, in the related patent infringement case in France, pointed to information stating that GEC's offshore footprint in the United States is in the Northeast.  *See Summons* at 17.

The accused Haliade-X offshore wind turbines are not even manufactured in the United States.  *See* Ex. A, Schellings Aff. ¶ 16.  They are manufactured in France.  *See id*.  They are then tested in the Netherlands and off the coast of the United Kingdom.  *See id.* ¶¶ 16, 18.  And while the Haliade-X offshore wind turbine blades have been tested in Boston, Massachusetts, where GEC is headquartered,[3] *see id.* ¶ 17, there is no activity related to the Haliade-X occurring in Florida.  Venue in this district is, therefore, improper under 28 U.S.C. § 1400(b).

     C.     <u>The Interests of Justice Do Not Compel Transfer</u>

When venue is improper, the court "shall dismiss, or if it be in the interest of justice, transfer such case to any district [ ] in which it could have been brought."  28 U.S.C. § 1406(a).  Although courts in the Eleventh Circuit generally favor transfer over dismissal, courts have dismissed patent infringement claims outright where, as here, venue was lacking.  *See, e.g.*, *Roblor Mktg. Grp., Inc. v. GPS Indus., Inc.*, 645 F. Supp. 2d 1130, 1157 (S.D. Fla. 2009); *HomeBingo Network, Inc. v. Chayevsky*, 428 F. Supp. 2d 1232, 1252 (S.D. Ala. 2006); *Lex Tex Ltd. v. Aileen, Inc.*, 326 F. Supp. 485, 487 (S.D. Fla. 1971).

**II.    If Not Dismissed, This Case Should be Transferred to The District of Massachusetts Pursuant to 28 U.S.C. § 1404(a)**

In the alternative, Defendants respectfully request that the Court transfer this case to the District of Massachusetts pursuant to 28 U.S.C. § 1404(a).  The purpose of transfer is "to prevent

---

[3] Tomas Kellner, *Shore Leave: A 107-Meter-Long Blade For The World's Most Powerful Offshore Wind Turbine Arrives In Boston For Testing* (Nov. 5, 2019), https://www.ge.com/news/reports/shore-leave-a-107-meter-long-blade-for-the-worlds-most-powerful-offshore-wind-turbine-arrives-in-boston-for-testing.

the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964) (internal quotations omitted).  Accordingly, a district court may transfer any civil action "[f]or the convenience of parties and witnesses, [or] in the interest of justice . . . to any other district or division where it might have been brought."  28 U.S.C. § 1404(a); *see also id*.

      A.    <u>Plaintiff Could Have Brought this Action in the District of Massachusetts</u>

"The threshold question in deciding a motion to transfer pursuant to § 1404(a) is whether the action could originally have been brought in the proposed transferee court." *Valentino v. Eli Lilly & Co.*, No. 6:14-CV-1816-ORL-41, 2015 WL 4352321, at *3 (M.D. Fla. July 14, 2015) (citing *Kelling v. Hartford Life & Acc. Ins. Co.*, 961 F. Supp. 2d 1216, 1219 (M.D. Fla. 2013) ("Transfer is inappropriate if the case could not have been filed in the proposed transferee district.")).  An action could have been brought in a transferee district if: (1) the court had jurisdiction over the subject matter of the action; (2) venue is proper there; and (3) the defendant is amenable to process issuing out of the transferee court.  *See Kelling*, 961 F. Supp. 2d at 1219.

Concerning the first factor, the District of Massachusetts would have had jurisdiction over the subject matter of this action because Plaintiff's claims arise under federal law.  District courts have been granted "original jurisdiction of any civil action arising under any Act of Congress relating to patents . . . ."  28 U.S.C. § 1338(a).  For a case to "arise under" federal patent law, a plaintiff's complaint must establish either that the federal patent law creates the cause of action or that the plaintiff's right to relief depends on resolution of a substantial question of federal patent law.  *See Holmes Grp., Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 830 (2002).

Here, Plaintiff seeks damages and injunctive relief based on allegations that the Defendants have infringed their patents and violated 35 U.S.C. § 271(a).  By asserting claims of patent infringement under federal law, Plaintiff's complaint establishes that federal patent law creates the

cause of action.  Accordingly, the District of Massachusetts would have had jurisdiction over the subject matter of this action under 28 U.S.C. § 1338(a).

For the second factor, venue would be proper in the District of Massachusetts under 28 U.S.C. § 1400(b).  Section 1400(b) states that "[a]ny civil action for patent infringement may be brought in the judicial district where the defendant resides, or where the defendant has committed acts of infringement and has a regular and established place of business."  Venue is proper when either of these two tests is satisfied.  *See TC Heartland*, 137 S. Ct. at 1519-20; *see also ParkerVision, Inc. v. Apple, Inc.,* No. 3:15-CV-1477-J-39JRK, 2018 WL 5084662, at *5-10 (M.D. Fla. Mar. 8, 2018).

GEC clearly has an established place of business in the District of Massachusetts.  GEC moved its headquarters to Boston, Massachusetts in 2016 and has maintained a physical place in the district since at least 2014.[4]  *See* Ex. A, Schellings Aff. ¶ 5; Ex. B, Stalica Aff. ¶ 5.  GEC has imported and tested Haliade-X offshore wind turbine components in the District of Massachusetts.  *See* Ex. A, Schellings Aff. ¶ 17.  Relatedly, SGRE itself recognized in a parallel proceeding in France, that sales activity related to GE's Haliade-X offshore wind turbines occurs in Massachusetts.  *See Summons* at 17.  "[A]n allegation of infringement – even if contested – is sufficient to establish venue is proper for purposes of Section 1400(b)."  *ParkerVision*, 2018 WL 5084662 at *9 (internal quotations omitted).  SGRE's allegations that the Haliade-X offshore wind turbines infringe its patents, though contested by GE, are sufficient to establish venue under § 1400(b).  This factor, therefore, weighs in favor of transfer to the District of Massachusetts.

---

[4] *See* GE Press Release (January 13, 2016), *GE Moves Headquarters to Boston*, https://www.ge.com/news/press-releases/ge-moves-headquarters-boston.

Regarding the third factor, Defendants are amenable to process in the District of Massachusetts.   As mentioned above, GEC is headquartered in Boston, Massachusetts and conducts business activities there.   GEC has also been haled into court in the District of Massachusetts on prior occasions.  *See, e.g., TurboCare Div. Demag. v. Gen. Elec. Co.*, C.A. No. 3-95-cv-30069 (D. Mass.); *Tele-Cons, Inc. v. Gen. Elec. Co.*, C.A. No. 1-04-cv-11497 (D. Mass.); *Menetone Solutions LLC v. Gen. Elec. Co.*, C.A. No. 1-19-cv-10211 (D. Mass.).  The third factor, therefore, also weighs in favor of transfer.

For these reasons, this threshold requirement is met and the present action could have originally been brought in the District of Massachusetts.

B.     Considerations of Convenience and Justice Weigh in Favor of Transfer to the
        District of Massachusetts

Once it has been determined that the action could have been brought in the proposed transferee district, the Court must next decide "whether a balancing of the convenience of the parties and the interest of justice favors transfer."  *Omega Patents, LLC v. Lear Corp.*, No. 607-CV-1422-ORL35DAB, 2009 WL 1513392, at *2 (M.D. Fla. May 27, 2009).  The district court retains broad discretion in determining whether a case should be transferred to another district. *See id.*  In deciding whether the transfer of a civil action is proper, courts in the Eleventh Circuit have considered a number of factors based on the totality of the circumstances, including:

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Kelling*, 961 F. Supp. 2d at 1218; *see also Valentino*, 2015 WL 4352321 at *3; *Laica-Bhoge v. Eli Lilly & Co.*, No. 614-CV-1286-ORL-41KR, 2015 WL 3919515, at *3 (M.D. Fla. June 25, 2015). Many of these factors weigh in favor of the transfer of this action to the District of Massachusetts.

11

As to the first, third, and sixth factors, Massachusetts is more convenient for witnesses and the parties. GEC is headquartered in Boston, Massachusetts, making the District of Massachusetts a more convenient venue for Defendants and its witnesses. As noted above, SGRE markets, sells, services, and provides operations and support for wind turbine products in the United States through its non-party affiliate, Siemens Gamesa Renewable Energy, Inc., which is a registered business entity in Massachusetts.[5] Upon information and belief, Siemens Gamesa Renewable Energy, Inc. maintains office space in Boston, Massachusetts.[6] And, as indicated on SGRE's website, the company is actively seeking to fill positions within its *Offshore Wind* Global Tender Department in Boston.[7] *See* Ex. D, *Cost Manager Sales Offshore (f/m/d),* Siemens Gamesa. Transfer to Massachusetts would be no less convenient for, nor prejudicial to, SGRE, particularly given that both GE and SGRE are established corporate entities, have connections to the proposed district, and have similar means to litigate this matter.

Similarly, the sources of documentary proof or tangible materials in Defendants' possession are more easily and readily accessible in the District of Massachusetts, where GEC maintains its headquarters. *See* Ex. A, Schellings Aff. ¶ 20. By contrast, there are no known or likely relevant documents or witnesses located in the Middle District of Florida. *See id.* ¶ 21; Ex. B, Stalica Aff. ¶ 16. The second factor, therefore, also weighs in favor of transfer to Massachusetts.

As to the eighth factor, when reviewing a motion to transfer under § 1404(a), "the plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other

---

[5] William F. Galvin, *Business Entity Summary: Siemens Gamesa Renewable Energy, Inc.*, Massachusetts Secretary of State, https://www.sec.state.ma.us/.
[6] *See* Lucia Maffei, *Siemens opens 'co-working' space of its own at One Federal*, Boston Bus. J. (Jul. 2, 2019), https://www.bizjournals.com/boston/news/2019/07/02/siemens-opens-co-working-space-of-its-own-at-one.html#:~:text=German%20manufacturing%20giant%20Siemens%20AG,first%2Dever%20U.S.%20coworking%20space.
[7] *See, e.g.*, *Tender Manager*, Siemens Gamesa (last visited Nov. 25, 2020), https://siemensgamesa.wd3.myworkdayjobs.com/en-US/SGRE/job/US-Boston-MA/Tender-Manager_R-04964.

considerations." *Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.*, 761 F. Supp. 2d 1322, 1330 (M.D. Fla. 2010) (quoting *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996)).  Here, the Plaintiff's choice of forum is sufficiently outweighed by "other considerations."  As stated above, the parties have no connection to this district.  Neither party resides in the Middle District of Florida, none of the allegedly infringing products is manufactured in this district, nor did any of the allegedly infringing acts take place in this district.  The Plaintiff's choice of venue was improper and, if not dismissed, these considerations support transfer of this case to the District of Massachusetts.

Finally, concerning factor nine, the interests of trial efficiency weigh in favor of transfer to the District of Massachusetts.  As of June 30, 2020, the District of Massachusetts had significantly fewer pending cases than the Middle District of Florida (4,731 pending cases in the District of Massachusetts and 8,499 pending cases in this district).[8]  The median time to civil trial in each district, however, is not significantly different (32 months in the District of Massachusetts and 26.2 months in this district).[9]  Transfer would provide some relief to this court by reducing its number of pending cases, preventing waste of resources, and protecting the public against unnecessary inconvenience and expense.  *See Van Dusen*, 376 U.S. at 616.  Accordingly, this factor favors transfer to the District of Massachusetts.

In sum, the applicable considerations for transfer indicate that the District of Massachusetts is clearly a more convenient forum.[10]

---

[8] *See United States District Courts – National Judicial Caseload Profile* at 4, 91 (last visited, Nov. 25, 2020), https://www.uscourts.gov/sites/default/files/data_tables/fcms_na_distprofile0630.2020.pdf.
[9] *Id*.
[10] Factors four, five, and seven do not weigh in favor of either forum.  Neither venue is the locus of operative facts. Both courts are capable of compelling the attendance of unwilling witnesses.  And Plaintiff's Complaint alleges violations of patent infringement under federal law and does not specify or reference any particular state's laws.  As such, either district court would be capable of adjudicating the present action.

## CONCLUSION

The Court should dismiss this case for improper venue.  Failing that, the case should be transferred to the District of Massachusetts.

## CERTIFICATION PURSUANT TO LOCAL RULE 3.01(g)

The undersigned counsel hereby certifies that she conferred with opposing counsel via telephone on November 19, 2020 in a good faith attempt to resolve the issues raised by this motion and that opposing counsel does not agree to the relief requested herein.

Dated: November 27 2020.

Respectfully submitted,

*/s/ Suzanne Barto Hill*
SUZANNE BARTO HILL, ESQ.
Florida Bar No. 0846694
JASON F. BULLINGER, ESQ.
Florida Bar No.: 1002286
RUMBERGER, KIRK & CALDWELL
300 South Orange Avenue, Suite 1400 (32801)
Post Office Box 1873
Orlando, Florida 32802-1873
Telephone: (407) 872-7300
Telecopier: (407) 841-2133
shill@rumberger.com
jbullinger@rumberger.com

LOUIS W. TOMPROS, ESQ.
Admitted *pro hac vice*
WILMER CUTLER PICKERING HALE
AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Telephone: (617) 526-6000
Telecopier: (617) 526-5000
louis.tompros@wilmerhale.com

**Attorneys for Defendants**

14

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on November 27, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to counsel of record.

*/s/ **Suzanne Barto Hill***
SUZANNE BARTO HILL, ESQUIRE
Florida Bar No. 0846694
JASON F. BULLINGER, ESQ.
Florida Bar No.: 1002286
RUMBERGER, KIRK & CALDWELL, P.A.