**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

SIEMENS GAMESA RENEWABLE
ENERGY A/S,

      Plaintiff,

v.                                                               CASE NO. 1:21-cv-10216-WGY

GENERAL ELECTRIC CO. et al,

      Defendant.

_____/

**SIEMENS GAMESA RENEWABLE ENERGY A/S'S ("SGRE")**
**<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

i

**TABLE OF CONTENTS**

I.      INTRODUCTION ..........................................................................................................1

II.     PROCEDURAL BACKGROUND..............................................................................1

III.    SUMMARY OF THE ASSERTED PATENTS .........................................................2

IV.     SUMMARY OF THE ACCUSED PRODUCTS .......................................................5

III.    ARGUMENT ...............................................................................................................7

        A.      Relevant Law .....................................................................................................7

                1.      Claim Construction ................................................................................7

                2.      Indefiniteness Under 35 U.S.C. § 112 ¶ 2 ............................................9

        B.      Construction of Disputed Claim Terms ..........................................................10

                1.      '413 Patent (claims 1-4): "an annular member" ................................10

                2.      '413 Patent (claims 8, 9, 11, and 13): "rotor hub"..............................12

                3.      '413 Patent (claims 8-10 and 12-13): "the bearing" ...........................13

                4.      '413 Patent (claim 8): "at least two bearings" / "the two bearings" /
                        "the at least two bearings" ..................................................................14

                5.      '776 Patent (claim 1): "a circular inner base structure"......................16

                6.      '776 Patent (claim 1): "connection structures".................................18

                7.      '776 Patent (claim 1): "hollow chamber" ...........................................19

IV.     CONCLUSION...........................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Azure Networks, LLC v. CSR PLC*,
    771 F.3d 1336 (Fed. Cir. 2014) (vacated on other grounds)....................................................8

*Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*,
    132 F.3d 701 (Fed. Cir. 1997)........................................................................................9

*Energizer Holdings, Inc. v. International Trade Com'n*,
    435 F.3d 1366 (Fed. Cir. 2006)..............................................................................13, 15

*Interactive Gift Express, Inc. v. Compuserve, Inc.*,
    256 F.3d 1323 (Fed. Cir. 2001)......................................................................................7

*Johnson Worldwide Assocs. v. Zebco Corp.*,
    175 F.3d 985 (Fed. Cir. 1999)........................................................................................8

*Liebel-Flarsheim Co. v. Medrad, Inc.*,
    358 F.3d 898 (Fed. Cir. 2004)........................................................................................8

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996).......................................................................................................9

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
    572 U.S. 898 (2014)....................................................................................9, 10, 14, 16

*Oatey Co. v. IPS Corp.*,
    514 F.3d 1271 (Fed. Cir. 2008)....................................................................................19

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) (en banc)..............................................................7, 8, 9

*RF Del, Inc. v. Pac. Keystone Techs., Inc.*,
    326 F.3d 1255 (Fed. Cir. 2003)..........................................................................8, 9, 10, 19

*Sonix Tech. Co. v. Publ'ns Int'l*,
    844 F.3d 1370 (Fed. Cir. 2017)......................................................................................9

*Superguide Corp. v. DirecTV Enters., Inc.*,
    358 F.3d 870 (Fed. Cir. 2004)........................................................................................9

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
    789 F.3d 1335 (Fed. Cir. 2015)..............................................................................10, 14, 16

*Versa Corp. v. Ag-Bag Int'l Ltd.*,
   392 F.3d 1325 (Fed. Cir. 2004).................................................................................8

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996).................................................................................9

**Statutes**

35 U.S.C. § 112.................................................................................................1, 7, 9

**Other Authorities**

U.S. Patent No. 8,575,776........................................................................... *passim*

U.S. Patent No. 9,279,413 ........................................................................... *passim*

## I.   INTRODUCTION

The disputed claim terms of the asserted patents are straightforward and need no construction.  General Electric Co.'s ("GE") proposed constructions attempt to re-write claim terms that have a plain and ordinary meaning by improperly importing limitations from the specification into the claims.  GE's constructions are inconsistent with the language of the claims and specification, and will likely confuse the jury.  And GE's argument that several claim terms are indefinite under 35 U.S.C. § 112 is unfounded.  Those terms are definite and have a plain and ordinary meaning consistent with the intrinsic evidence.

Significantly, when GE filed its *inter partes* review petitions recently challenging the validity of the asserted patents, GE had no trouble understanding the claims.  It argued to the Patent Office that ***no claim construction was necessary*** and that each claim term should be given its ***plain and ordinary meaning***, exactly what Siemens Gamesa Renewable Energy A/S ("SGRE") is arguing here.  *See* IPR No. IPR2021-00722, Paper 1 at 25 (Ex. A); IPR No. IPR2021-00723, Paper 1 at 22 (Ex. B).  Now, GE claims that many terms of the asserted patents need construction and/or are indefinite.  This Court should reject GE's proposed constructions, find that no constructions are necessary, and find that the claim terms are not indefinite.

## II.   PROCEDURAL BACKGROUND

GE and SGRE each develop and manufacture wind turbines and have competed in the wind-turbine market for almost twenty years.  (*See* Dkt. No. 1, ¶ 17).  SGRE is the owner of U.S. Patent Nos. 8,575,776 (the "'776 patent") and 9,279,413 (the "'413 patent") (collectively, "the asserted patents")[1] that are generally directed to wind turbines.  (*Id.*, ¶ 4).  SGRE filed this action alleging that certain of GE's wind turbines infringe the claims of the asserted patents.  SGRE

---

[1] The '776 and '413 patents are attached to this brief as Exhibits C and D, respectively.

presently asserts claims 1-6 of the '776 patent and claims 1-4 and 8-13 of the '413 patent against GE's Haliade-X series wind turbines.

The parties exchanged claim terms on May 28, 2021.  Thereafter, the parties reached agreement that the preambles of claims 1 and 8 ("A rotor hub for a wind turbine, comprising" and "A wind turbine, comprising") of the '413 patent are limiting and submitted a Joint Claim Construction Statement to the Court.  (Dkt. No. 79, Ex. E).[2]  Seven claim terms, all proposed by GE, currently remain in dispute.  *See id.*

## III.   SUMMARY OF THE ASSERTED PATENTS

Both the '776 and '413 patents generally relate to wind turbine technology.  They are straightforward and contain simple mechanical claims.

The '413 patent is titled "Wind Turbine," and is directed to a novel structural support arrangement for the turbine that enables wind turbines to be larger and/or handle increased loads, which in turn allows the wind turbine to generate more energy.  As the patent explains, "[a] main shaft is stationary arranged within the nacelle that rotatably mounts a rotor hub with a plurality of rotor blades via a main bearing."  '413 patent at 1:23-25.  According to the '413 Patent, at least one bearing is moved into the interior of the rotor hub.  *See* Declaration of Timothy L. Morse, Ph.D., P.E., CFEI (the "Morse Decl.") (Ex. F) ¶ 20.  By placing the bearing "as close to the centre of mass of the rotating parts as possible," static and dynamic bending moments exerted on the bearing are reduced such that the load on the bearing is also reduced.  *See* '413 patent at 2:17-22.

---

[2] On June 23, 2021, GE informed SGRE that it no longer intends to argue that the '776 Patent terms "wherein the hollow chamber is ventilated" and "a bearing assembly" are indefinite.



One embodiment disclosed in the '413 patent specification is reproduced here. Figure 5 shows a rotor hub (102) rotatably connected to a main shaft (111) via bearing (113). Figure 5 additionally shows an example of an annular member (117). Exemplary claim 1 of the '413 patent recites:

> 1. A rotor hub for a wind turbine, comprising:
>
> a hollow shell defining an interior; and
>
> an annular member integral part of or connectable to a bearing,
>
> wherein the rotor hub is adapted to be connected to a plurality of rotor blades,
>
> wherein the bearing is adapted to rotatably mount the rotor hub to a stationary main shaft of the wind turbine,
>
> wherein the annular member protrudes inwards into the interior of the rotor hub; and wherein the annular member extends axially inwards into the interior from a side of the hollow shell configured to face, when the wind turbine is assembled, the stationary main shaft of the wind turbine.

The '776 patent is titled "Wind Turbine With A Generator," generally discloses a wind turbine with an improved stator, which improves the operation of the turbine and simplifies its maintenance. The patent explains, "[t]ypically a direct-drive wind turbine comprises a generator with an outer rotor." Morse Decl. ¶ 15 (quoting '776 patent at 1:26-27). A generator typically includes a rotating component, referred to as a rotor (which includes permanent magnets) and a stationary component, referred to as a stator (which includes conductive coils). *Id.* Because "high forces such as torsion are acting on the [wind turbine] structure, in particular on the stator support structure . . . it is important that the stator support structure is very rigid." '776 patent at 1:28-31.

The '776 patent achieves the rigidity through a stator structure that according to the specification "comprises a base structure on which circular connection structures are mounted with their inner perimeter, whereby a stator base structure is connected to the outer perimeter of the circular structures."  Morse Decl. ¶ 15 (citing '776 patent at 1:40-45).

The figures below are a reproduction of Figures 1 and 2 of the '776 patent.  *See also* Morse Decl., Fig. 2.  In relevant part, Figure 1 shows an example of a direct drive wind turbine with a rotor (blue) which is fixed to the rotor hub (6).  Both components rotate relative to a stator (3).  *Id.* As shown in Figures 1 and 2, the stator comprises an inner base structure (red), connection structures (green), and an outer base structure (yellow).



Exemplary claim 1 of the '776 patent recites:

> 1. A wind turbine with a generator, comprising:
>
> a rotor comprising permanent magnets and arranged around an axis of rotation;
>
> a stator arranged radially inward from the rotor, the stator comprising:
>
> stator coils;
>
> a circular inner base structure;

4

a circular outer base structure on which the stator coils are mounted; and

a plurality of connection structures, each of the plurality of connection structures separated axially and radially extending between the circular inner base structure and the circular outer base structure forming a hollow chamber between the circular inner base structure, outer base structure and the plurality of connection structures,

wherein the hollow chamber is ventilated, and

wherein the plurality of connection structures are connected to the circular inner base structure and connected to the circular outer base structure.

## IV.    SUMMARY OF THE ACCUSED PRODUCTS

SGRE has accused GE's Haliade-X series wind turbines of infringing the asserted patents.

| '413 Patent, Figure 5 (one example from the patent) | Accused Wind Turbines (Dkt. No. 1, ¶ 40) |
|---|---|
|  | The accused wind turbines include a rotor hub for a wind turbine, as shown above.  The rotor hub |

|  | includes a hollow shell defining an interior. |
|  |  |
|  | Of relevance here, an annular member protrudes into the interior of the shell of the rotor and a bearing is attached to the annular member. The bearing is adapted to rotatably mount the rotor hub to a stationary main shaft of the wind turbine. |

| '776 Patent, Figure 1 (one example from the patent) | Accused Wind Turbines (Dkt. No. 1, ¶¶ 30, 31) |
|---|---|
|  |  The accused wind turbines include a rotor and a stator, as shown above. |



 Of relevance here, the accused wind turbines include a circular inner base structure and a plurality of connection structures.

The plurality of connection structures are separated from one another and extend between the circular inner base structure and the circular outer base structure. A hollow chamber is formed between the circular inner base structure, outer base structure and the plurality of connection structures.

## III.    ARGUMENT

### A.    Relevant Law

#### 1.    Claim Construction

It is a "bedrock" principle of claim construction that "the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quotations omitted).  "[T]he analytical focus must begin and remain centered on the language of the claims themselves, for it is that language that the patentee chose to use to 'particularly point[] out and distinctly claim[] the subject matter which the patentee regards as his invention.'" *Interactive Gift Express, Inc. v. Compuserve, Inc.*, 256 F.3d 1323, 1331 (Fed. Cir. 2001) (alterations in original) (quoting 35 U.S.C. § 112, ¶ 2).

The first and foremost fundamental canon of claim construction is that each claim term is construed according to its ordinary and accustomed meaning as understood by one of ordinary skill in the art ("POSA") [3] at the time of the invention after reviewing the intrinsic evidence—*i.e.*, the claims themselves, the specification, and the prosecution history. *Phillips*, 415 F.3d at 1312–14. Thus, a court is to presume that claims mean "what they say" and give a claim term the "full range" of its ordinary meaning in light of the intrinsic evidence. *Johnson Worldwide Assocs. v. Zebco Corp.*, 175 F.3d 985, 989 (Fed. Cir. 1999); *see also Azure Networks, LLC v. CSR PLC*, 771 F.3d 1336, 1347 (Fed. Cir. 2014) (vacated on other grounds) ("There is a heavy presumption that claim terms carry their accustomed meaning in the relevant community at the relevant time." (quotations omitted)).

The claim language itself, including the context of the surrounding words and the language of surrounding claim terms, is highly relevant to claim construction. *Phillips*, 415 F.3d at 1314. For example, the presence of a dependent claim that adds a limitation creates the presumption that the limitation is not present in the independent claim. *Id*. at 1314-15 (citing *Liebel-Flarsheim Co. v. Medrad, Inc.*, 358 F.3d 898, 910 (Fed. Cir. 2004)). In general, there is a "presumption that each claim in a patent has a different scope." *Versa Corp. v. Ag-Bag Int'l Ltd.*, 392 F.3d 1325, 1330 (Fed. Cir. 2004) (quotations omitted). Claim terms should be defined in a way that "stays true to the claim language and most naturally aligns with the patent's description of the invention." *Phillips*, 415 F.3d at 1316 (quotations omitted).

Another fundamental canon of claim construction is that "one may not read a limitation into a claim from the written description." *RF Del, Inc. v. Pac. Keystone Techs., Inc.*, 326 F.3d 1255, 1264 (Fed. Cir. 2003); *Phillips*, 415 F.3d at 1320 ("one of the cardinal sins of patent law [is]

---

[3] The definition of a POSA is set forth in the Morse Decl., ¶ 8)

reading a limitation from the written description into the claims" (quotations omitted)).  Claims "are not necessarily and not usually limited in scope simply to the preferred embodiment" of the invention disclosed in the specification of the patent.  *RF Del*, 326 F.3d at 1263.  In fact, it is common and accepted that patent claims are often broader in scope than the specific example embodiments in the patent specification.  *See Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

A third fundamental canon is that extrinsic evidence—that is, evidence outside the patent claims, the patent specification, and the patent's prosecution history—is of discretionary use by the Court and "may not be used to vary or contradict the claim language."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1584 (Fed. Cir. 1996).  For example, extrinsic evidence like inventor or expert testimony should be used in limited circumstances for claim construction.  *Bell & Howell Document Mgmt. Prods. Co. v. Altek Sys.*, 132 F.3d 701, 706 (Fed. Cir. 1997); *Phillips*, 415 F.3d at 1318.  Claim construction is an issue of law for the Court.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 386 (1996).

## 2.     Indefiniteness Under 35 U.S.C. § 112 ¶ 2

35 U.S.C. § 112, second paragraph, requires that a patent specification "conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the inventor or a joint inventor regards as the invention."  As interpreted by the Supreme Court, this requires that "a patent's claims, viewed in light of the specification and prosecution history, inform those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 910 (2014).  Section 112, ¶ 2 "strikes a 'delicate balance' between 'the inherent limitations of language' and providing 'clear notice of what is claimed.'"  *Sonix Tech. Co. v. Publ'ns Int'l*, 844 F.3d 1370, 1377 (Fed. Cir. 2017) (quoting *Nautilus*, 572 U.S. at 909).  "Absolute precision is unattainable."  *Nautilus*, 572 U.S. at 910.  "[T]he certainty which

the law requires in patents is not greater than is reasonable, having regard to their subject-matter."

*Id.* (quotations omitted). The patent challenger must prove indefiniteness by clear and convincing evidence. *See Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 789 F.3d 1335, 1345 (Fed. Cir. 2015).

### B. Construction of Disputed Claim Terms

#### 1. '413 Patent (claims 1-4): "an annular member"

| Claim Term/Phrase | SGRE's Construction | GE's Construction |
|---|---|---|
| "an annular member" | No construction necessary; plain and ordinary meaning | "a part of the rotor hub contained within the hollow shell" |

There are multiple problems with GE's construction. First, GE's construction adds limitations to the claim term that are not necessary. Importantly, the parties do not dispute the meaning of "annular." The parties also do not dispute the meaning of "member," which is clear. SGRE therefore submits that no construction is required.

GE, on the other hand, adds extraneous limitations such as "rotor hub," "*a part of the* rotor hub," and "contained within the hollow shell." None of these proposed additions add clarity to this straightforward claim term. Instead, GE's proposed construction is a text-book example of reading limitations into the claim that are not present. *See RF Del*, 326 F.3d at 1264. For instance, the claim just says "an annular member." There is nothing in the claim that says the annular member has to be "a part of the rotor hub." And there is no reason whatsoever to swap out "an annular member" and replace it with the concept of a "rotor hub," which is a completely different

structure.  GE is clearly just trying to rewrite the claims and import limitations into the claims to set up some sort of potential non-infringement argument.  *Id.*

Second, GE's proposed construction is actually inconsistent with the claims and would introduce nothing more than confusion.  For instance, substituting GE's construction into claim 1 would result in the following claim:

> 1. A rotor hub for a wind turbine, comprising:
>
> a hollow shell defining an interior; and
>
> ~~an annular member~~ <u>a part of the rotor hub contained within the hollow shell</u> integral part of or connectable to a bearing,
>
> wherein the rotor hub is adapted to be connected to a plurality of rotor blades,
>
> wherein the bearing is adapted to rotatably mount the rotor hub to a stationary main shaft of the wind turbine,
>
> wherein ~~the annular member~~ <u>the part of the rotor hub contained within the hollow shell</u> protrudes inwards into the interior of the rotor hub; and wherein ~~the annular member~~ <u>the part of the rotor hub contained within the hollow shell</u> extends axially inwards into the interior from a side of the hollow shell configured to face, when the wind turbine is assembled, the stationary main shaft of the wind turbine.

This makes no sense.  As shown above, the "rotor hub" limitation is already in the claim thus redefining "an annular member" as "a part of the rotor hub" as GE proposes is circular and non-sensical.  Moreover, as seen later in the claim, the claim already requires that "the annular member" protrude inwards into the interior of the rotor hub, so it makes no sense to introduce that same concept by inserting "a part of the rotor hub ***contained within the hollow shell.***"

There is another important reason why GE's proposed construction adds confusion.  The proposed construction requires that the annular member be defined as "***a part of the*** rotor hub."  What does that mean, to be "***a part of the*** rotor hub"?  Is GE saying that the rotor hub and the annular member must be formed from a single piece?  What if the annular member is a separate piece but is connected to the rotor hub?  In that case, is the annular member ***a part of the*** rotor

11

hub?  There is no way of knowing based on GE's proposed construction.  Thus, not only is GE improperly reading limitations into the claims, it is also adding ambiguity into the claim.

In sum, based on the language of claim 1 alone, even a layperson would know what "an annular member" is and how it relates to other elements in the claim.  Accordingly, no construction is necessary.

2.    '413 Patent (claims 8, 9, 11, and 13): "rotor hub"

| Claim Term/Phrase | SGRE's Construction | GE's Construction |
|---|---|---|
| "rotor hub" | No construction necessary; plain and ordinary meaning.<br><br>Definite. | "rotor hub having an annular member"<br><br>To the extent construed otherwise, claim 9 is indefinite under § 112 |

GE alleges that "rotor hub" in claim 8 must be construed as "a rotor hub having an annular member," otherwise dependent claim 9 is indefinite.  The only relevant question for claim 8, however, is whether "rotor hub" should be construed in the manner alleged by GE.  It should not. Rotor hubs are common components of wind turbines (*see* '413 Patent at 1:20-2:4), and they have a well-known meaning to a POSA.  Specifically, a "rotor hub" is the wind turbine component that holds the wind turbine blades and rotates as wind pushes against the blades.  Morse Decl. ¶¶ 12, 34.  GE's construction does not even define the term "rotor hub" itself.  Instead, it merely repeats "rotor hub" *and adds the limitation* "having an annular member."  It is another blatant attempt to add a limitation and narrow the claim scope.[4]

---

[4] GE's construction is even more erroneous in light of its proposed construction for "an annular member" discussed in the previous section.  If one were to plug in GE's construction for "an annular member" into its construction for a "rotor hub," GE's construction for "rotor hub" would be: "rotor hub having" "a part of the rotor hub contained within the hollow shell."  Importing GE's construction for "an annular member" into GE's construction of "rotor hub" reveals the non-sensical and circular nature of GE's constructions, which will undoubtedly confuse the jury.

GE apparently believes that because dependent claim 9 recites "*the* annular member," that means that "an annular member" should be imported into claim 8. A person of ordinary skill in the art, however, would recognize that claim 9 introduces the concept of an "annular member" for the first time in claim 9. *Id.* ¶ 38. There is no basis for treating such an introduction, in claim 9, as a modification of independent claim 8, from which claim 9 depends. *Id.* Claim 8 is clear and consistent, and the scope of claim 8 is readily ascertainable by a POSA. *Id.* Therefore, there is no reason to import any limitations into independent claim 8, especially since claim 8 is "clear on its face." *Id.*

Finally, claim 9 is not indefinite just because "annular member" is introduced into that claim by "*the* annular member" instead of "*an* annular member." As stated above, A POSA would understand that claim 9 introduces the concept of an "annular member" for the first time in claim 9. Morse Decl., ¶ 38. "When the meaning of the claim would reasonably be understood by persons of ordinary skill when read in light of the specification, the claim is not subject to invalidity upon departure from the protocol of 'antecedent basis.'" *Energizer Holdings, Inc. v. International Trade Com'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006).

In sum, "rotor hub" in claim 8 is clear and needs no construction. And claim 9 is not indefinite just because it recites "*the* annular member" instead of "*an* annular member."

### 3.    '413 Patent (claims 8-10 and 12-13): "the bearing"

| Claim Term/Phrase | SGRE's Construction | GE's Construction |
|---|---|---|
| "the bearing" | Definite<br><br>No construction necessary; plain and ordinary meaning | Indefinite under § 112<br><br>Otherwise, the antecedent basis for "the bearing" is "a bearing" |

"The bearing" is not indefinite. As an initial matter, bearings are well-known to those of skill in the art in the field of wind turbines. Morse Decl. ¶ 40. One of skill in the art "would be

very familiar with bearings and would understand the meaning of the term 'bearing' in the context of the '413 patent." *Id.*

Claim 8 first recites "bearing" as follows: "wherein the rotor hub is rotatably mounted to the stationary main shaft via *a bearing* (emphasis added)." '413 patent at 12:18-19. Claim 8 later refers to "a bearing" as "the bearing" in a subsequent line ("wherein the bearing is arranged within the interior of the rotor hub"). *Id.* at 20. It would be clear to a POSA "that the reference to 'the bearing' refers to the term "a bearing' that was introduced earlier in the claim." Morse Decl. ¶ 41. A POSA "would understand the scope of claim 8 with reasonable certainty, and the use of 'the bearing' to refer to the instance of "a bearing", introduced earlier, would not prevent a POSA from understanding the scope of claim 8 with reasonable certainty." *Id.*

Therefore, when viewed in light of the specification" the phrase "the bearing" "inform[s] those skilled in the art about the scope of the invention with reasonable certainty." *Nautilus*, 572 U.S. at 910; *see also* Morse Decl. ¶ 41. "The bearing" is not indefinite under any standard, let alone under the clear and convincing evidence standard by which GE must demonstrate indefiniteness. *See Teva*, 789 F.3d at 1345.

4.      '413 Patent (claim 8): "at least two bearings" / "the two bearings" / "the at least two bearings"

| Claim Term/Phrase | SGRE's Construction | GE's Construction |
|---|---|---|
| "at least two bearings" / "the two bearings" / "the at least two bearings" | Definite<br><br>No construction necessary; plain and ordinary meaning | Indefinite under § 112<br><br>Otherwise, "at least two bearings in addition to 'the bearing' recited in the claim, for a total of at least three bearings" |

GE alleges that the claim terms "at least two bearings", "the two bearings", and "the at least two bearings" are indefinite, but a POSA, in light of the specification, can readily understand claim 8 with reasonable certainty.

The terms "at least two bearings"/"the two bearings"/"the at least two bearings" appear in independent claim 8.  As discussed in the previous section, claim 8 first recites "a bearing" at 12:18-19, and then refers to it as "the bearing" at 12:20.  The first use of "bearing" in claim 8 is broad.  As claim 8 continues to describe limitations, it defines "bearing" more narrowly, as at least two bearings, which is consistent with the specification, in which some embodiments only show two bearings.  Therefore, claim 8, when read as a whole, requires at least two bearings.  Any argument by GE that somehow there is no antecedent basis for "two bearings" is unfounded.  *See Energizer Holdings, Inc*, 435 F.3d at 1370 ("When the meaning of the claim would reasonably be understood by persons of ordinary skill when read in light of the specification, the claim is not subject to invalidity upon departure from the protocol of "antecedent basis.").

When "viewed in light of the specification and prosecution history," the phrases "at least two bearings"/"the two bearings"/"the at least two bearings" "inform[s] those skilled in the art about the scope of the invention with reasonable certainty."  *Nautilus*, 572 U.S. at 910; *see also* Morse Decl. ¶¶ 42-46.  The specification illustrates seven embodiments, some of which show only one bearing and some of which show only two bearings.  *Id.*  In particular, "[t]he first, second, and fifth embodiments show one bearing rotatably connecting the rotor hub to the main shaft, whereas the rest of the embodiments show only two bearings rotatably connecting the rotor hub to the main shaft."  *Id.*  "A POSA reading claim 8, in light of the specification and drawings, would not understand claim 8 to require three bearings, especially given that there is no embodiment showing three bearings."  *Id.*  The terms "at least two bearings", "the two bearings", and "the at least two

bearings" are clearly not indefinite under any standard, let alone under the clear and convincing evidence standard by which GE must demonstrate indefiniteness. *See Teva*, 789 F.3d at 1345.

GE proposes that if claim 8 is not indefinite, then "at least two bearings"/"the two bearings"/"the at least two bearings" should be construed as "at least two bearings in addition to 'the bearing' recited in the claim, for a total of at least three bearings." There is no basis in the '413 patent for such a construction. Morse Decl. ¶¶ 42-46. As set forth above, the specification shows embodiments with only one bearing and embodiments with only two bearings. "A POSA reading claim 8, in light of the specification and drawings, would not understand claim 8 to require three bearings, especially given that there is no embodiment showing three bearings." *Id.* GE's proposed construction is flawed because it attempts to read in a limitation ("three bearings") that is not even described in the specification.

### 5.    '776 Patent (claim 1): "a circular inner base structure"

| Claim Term/Phrase | SGRE's Construction | GE's Construction |
|---|---|---|
| "a circular inner base structure" | No construction necessary; plain and ordinary meaning | "a rigid structure in the shape of a circle that provides base support for the plurality of connection structures, the circular outer base structure, and the stator coils" |

GE is again trying to change the meaning of a claim term — "a circular inner base structure"— that is clear on its face. The parties do not dispute the meaning of "circular" or "inner base structure" in isolation. SGRE therefore submits that no construction is required.

GE, on the other hand, proposes to add (1) "a rigid structure," (2) "in the shape of a circle," and (3) "that provides base support for the plurality of connection structures, the circular outer base structure, and the stator coils." There is nothing in the claim itself that says the "circular inner base structure" has to have these three requirements. Claim 1 provides "[a] wind turbine with a

generator, comprising . . . *a circular inner base structure* . . . a plurality of connection structures . . . between *the circular inner base structure* and the circular outer base structure forming a hollow chamber between *the circular inner base structure*, outer base structure and the plurality of connection structures." '776 patent at 3:25-4:5. Based on this language, a "circular inner base structure" and how it relates to the other elements in the claim is clear.



The '776 Patent specification discloses an example of a circular inner base structure in Figure 2 at element 9. In view of the claims and Figure 2 of the '776 patent specification, "a circular inner base structure" has a plain and ordinary meaning that does not require a construction. GE tries to change "circular" by replacing it with "in the *shape of a circle*." GE's construction in this regard is far narrower than just "circular" and should be rejected. There is simply no reason to swap out "circular," which is clear to begin with, and replace with "the shape of a circle."

The rest of the terms proposed by GE are just simply not needed to understand the claim term. For example, there is no need to add "a rigid structure" or "that provides base support for . . ." to the construction. These are just extra words that are not needed to understand or clarify "a circular inner base structure." GE's additional limitations to a simple and clear claim term will only confuse a jury.

Accordingly, the Court should reject GE's construction. No construction is necessary.

6.  '776 Patent (claim 1): "connection structures"

| Claim Term/Phrase | SGRE's Construction | GE's Construction |
|---|---|---|
| "connection structures" | No construction necessary; plain and ordinary meaning | "solid circular connection rings" |

Here again, GE is trying to change the meaning of a claim term "connection structures" that is crystal clear on its face.  The parties do not dispute the meaning of "connection" or "structures" in isolation.  SGRE therefore submits that no construction is required.

GE, on the other hand, blatantly tries to add "solid," "circular," and "rings" to the construction.  There is nothing in the claim itself about the "connection" structures being "solid," "circular," or "rings."  For example, claim 1 recites "[a] wind turbine with a generator, comprising . . . a plurality of *connection structures* . . . between the circular inner base structure and the circular outer base structure forming a hollow chamber between the circular inner base structure, outer base structure and the plurality of *connection structures*."  '776 patent at 3:25-4:5 (emphasis added).  Based on this language, even a layperson would know what "connection structures" are and how they relate to the other elements in the claim.  Again, by attempting to include "circular" and "rings," GE is simply reading an example from the specification into the claims, which is improper.  *See RF Del*, 326 F.3d at 1264.  Further, GE's view that the construction should be limited to "rings" is inconsistent with the specification, which discloses an embodiment where the connection structures are "C-shaped."  '776 Patent at 3:16-21; *see also* Fig. 3.  GE's proposed construction would improperly exclude an embodiment disclosed in the specification.  *See Oatey Co. v. IPS Corp.*, 514 F.3d 1271, 1276 (Fed. Cir. 2008).

GE's construction also introduces ambiguity into the claim.  The '776 patent specification does not use the word "solid" once.  Yet, without support, GE attempts to further limit "connection structures" to be "solid," whatever that means, creating ambiguity where none existed.  GE's

motives are clear—by inserting "solid circular connection rings" in the claims, GE may try to argue that the connection structures in its product are not solid, are not circular, and are not rings.

In sum, "connection structures" is clear in light of the claims and specification, and thus no construction is necessary.

       7.     **'776 Patent (claim 1): "hollow chamber"**

| Claim Term/Phrase | SGRE's Construction | GE's Construction |
|---|---|---|
| "hollow chamber" | No construction necessary; plain and ordinary meaning | "enclosed empty space" |

A "hollow chamber" has a plain and ordinary meaning that is clear. Claim 1 recites "[a] wind turbine with a generator, comprising . . . a plurality of connection structures . . . extending between the circular inner base structure and the circular outer base structure forming a ***hollow chamber*** between the circular inner base structure, outer base structure and the plurality of connection structures." '776 patent at 3:25-4:5 (emphasis added). Claim 1 clearly explains that the hollow chamber is formed by a plurality of connection structures, the circular inner base structure, and the circular outer base structure. There is nothing in the claim about the chamber being "enclosed" or having an "empty space." Figure 2 of the '776 patent specification illustrates one example of a hollow chamber:



FIG 2

Yet again, GE is trying to change the meaning of a claim term – "hollow chamber" – that is crystal clear on its face. The parties do not dispute the meaning of "hollow" or "chamber" in isolation. SGRE therefore submits that no construction is required.

GE, on the other hand, blatantly tries to re-write the claim to add the requirement that the hollow chamber be "enclosed."  In fact, the word "enclosed" is nowhere to be found in the '776 patent and introduces ambiguity where none exists.  Does "enclosed" merely mean surrounded by walls or structures?  Does it mean closed in on all sides?  The patent provides zero guidance for GE's brand-new term.  Re-writing the claims in this manner only confuses things, not clarifies. So too does GE's inclusion of the words "empty space."  There is simply no basis to delete hollow – a readily understood term – and replace it with "empty space."  Presumably, GE wants to add this limitation to argue that the stator structure in its Haliade-X turbines does not have a chamber that is "empty."  Again, the word "empty" does not appear anywhere in the '776 patent.  And to the extent that GE may try to argue that the specification shows an example of a chamber that is "empty," it would be improper to import any such example from the specification into the claims.

Therefore, this Court should reject GE's construction.

## IV.    CONCLUSION

In view of the above, this Court should find that no construction is necessary, and that the claim terms are not indefinite.

Dated: June 25, 2021                              Respectfully submitted,

                                                  /s/ Cory C. Bell
                                                  Cory C. Bell, Esq. (BBO #705124)
                                                  Alissa K. Lipton, Esq. (BBO #678314)
                                                  Finnegan Henderson Farabow
                                                  Garrett & Dunner, LLP
                                                  Two Seaport Lane
                                                  Boston, Massachusetts 02210
                                                  Telephone (617) 646-1600
                                                  Facsimile (617) 646-1666
                                                  cory.bell@finnegan.com
                                                  alissa.lipton@finnegan.com

                                                  Stephanie M. Hatzikyriakou, Esq. (PHV)

Primary:  shatzikyriakou@bakerlaw.com
BAKER & HOSTETLER LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
Telephone (215) 568-3100
Facsimile (215) 568-3439

Robert W. Thielhelm, Jr., Esq. (PHV)
Florida Bar No. 889679
Baker & Hostetler LLP
200 S. Orange Avenue, Suite 2300
Orlando, Florida 32801
Telephone (407) 649-4000
Facsimile (407) 841-0168
rthielhelm@bakerlaw.com

Leif R. Sigmond, Jr., Esq. (PHV)
Michael D. Gannon, Esq. (PHV)
Douglas S. Rupert, Esq. (PHV)
Baker & Hostetler LLP
One N. Wacker Drive, Suite 4500
Chicago, Illinois 60606
Telephone (312) 416-6200
Facsimile (312) 416-6201
lsigmond@bakerlaw.com
mgannon@bakerlaw.com
drupert@bakerlaw.com

*Attorneys for Plaintiff, Siemens
Gamesa Renewable Energy A/S*

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that this document was filed through the CM/ECF system and will be sent electronically to the registered participants identified on the Notice of Electronic Filing.

*/s/* Cory C. Bell
Cory C. Bell BBO #705124