**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| SIEMENS GAMESA RENEWABLE ENERGY A/S,<br><br>              Plaintiff,<br><br>     v.<br><br>GENERAL ELECTRIC COMPANY,<br><br>              Defendant. | Case No. 1:21-cv-10216-WGY<br><br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM IN SUPPORT OF DEFENDANT**
**GENERAL ELECTRIC COMPANY'S MOTION**
**TO EXCLUDE EXPERT TESTIMONY OF TIMOTHY MORSE**

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Bourjaily v. United States*,
    483 U.S. 171 (1987)........................................................................................ 4

*Daubert v. Merrell Dow Pharms., Inc.*,
    43 F.3d 1311 (9th Cir. 1995)........................................................................ 4

*Daubert v. Merrell Dow Pharms., Inc.*,
    509 U.S. 579 (1993).....................................................................................1, 4

**STATUTES AND RULES**

Fed. R. Evid. 702................................................................................................ 4

Defendant General Electric Company ("GE"), pursuant to Federal Rules of Evidence 702 and 703 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), submits this memorandum in support of its Motion to Exclude the Expert Opinion of Timothy Morse.

Dr. Morse claims to be an expert on "the design and development of wind turbines." Ex. 1, Expert Report of Timothy Morse ("Morse Rpt.") ¶ 5; *see also* Ex. 2, Deposition of Timothy Morse (December 7, 2021) ("Morse Dep.") 8:10-11 ("Q Are you an expert on wind turbines? A Yeah.").

But he lacks such expertise. Rather, Dr. Morse is a fire investigator. Ex. 2, Morse Dep. at 9:8-10 ("Q You're a fire investigator. Correct? A Yes."); *id.* 296:7-11 (admitting that he uses the title "Certified Fire and Explosion Investigator"); Ex. 3, Morse Rpt., Ex. A at 1 (resume of Dr. Morse stating "Dr. Morse applies his expertise to the investigation and prevention of fires, explosions, floods, and equipment failures").

Though he claims to be an expert in "***the design*** . . . of ***wind turbines***," Ex. 1, Morse Rpt. ¶ 5, Dr. Morse has never actually designed a wind turbine. Ex. 2, Morse Dep. 38:10-15. Nor has he been responsible for the design of any component of a wind turbine. *Id.* 42:14-21. He has never even taken a wind turbine design class. *Id.* 48:18-49:12. At best, he once provided some input about the proper size of a lightning rod necessary for a particular wind turbine for purposes of fire safety, *id.* 39:8-40:4, but once investigating a wind turbine fire does not make him an expert on wind turbine ***design***.

Similarly, though he claims to be an expert in "the . . . ***development of wind turbines***," Ex. 1, Morse Rpt. ¶ 5, he has never developed a wind turbine. Ex. 2, Morse Dep. 47:4-11 ("Q You have never developed a wind turbine. Correct? A I think that's correct. I suppose it's

possible that you and I have a different idea of what is meant by 'developed,' but I don't consider myself to have developed a wind turbine.").

Dr. Morse's scientific expertise is not in the field of wind-turbines at all.  He has "never authored a peer-reviewed publication on wind turbines."  *Id.* 50:20-51:2.  He has no patents on wind turbines or wind turbine components.  *See* Ex. 3, Morse Rpt., Ex. A at 1-6 (CV listing no wind turbine patents).  Prior to his involvement in this case, he had never even heard of any of the inventors of the asserted patents—including Siemens's own Henrik Stiesdal (who is famous enough in the wind turbine industry to have a Wikipedia page).  *See* Ex. 2, Morse Dep. 27:13-28:15, 29:9-20.  In fact, even today (much less at the time of the alleged invention) Dr. Morse does not even satisfy his own standard for a person of ordinary skill in the art, which he opines requires "two or more years of experience in the field of wind turbines."[1]  Ex. 1, Morse Rpt. ¶ 53.

What Dr. Morse does have is considerable litigation experience—namely, in the fire investigation and insurance claim area.  The majority of his time (60 to 65%) over the last five years has been in litigation-related activities.  Ex. 2, Morse Dep. 283:5-11.  "[A]round half" of his litigation work involved fires, and the majority of his litigation work involved insurance claims.  *Id.* 284:4-7, 285:12-25 ("And most but not all of the failure analysis work that I do involves an insurance company, as you might be able to imagine."); *see also* Ex. 3, Morse Rpt., Ex. A at 1 (Morse CV beginning "Dr. Morse is a licensed professional mechanical engineer who specializes in failure analysis, failure prevention, and design risk assessment for thermal and flow processes, products, and equipment").  His entire professional career has been at "E$^x$ponent,

---

[1] Dr. Morse argues that "a Master's degree" "may" compensate for "[l]ess work experience," but does not identify a combination of credentials that would render someone with *no wind turbine design or development experience whatsoever* a person of skill in the art.

Inc.," a firm which handles litigation consulting. *See id.* (Morse CV). He is a professional testifying expert.

As a result of his lack of experience in wind turbine design and development, Dr. Morse unfortunately gets basic facts wrong about wind turbine design and development. For example, Dr. Morse conceded at his deposition that part of an important statement in his opening report— "SGRE's wind turbines also practice the claimed inventions," Ex. 1, Morse Rpt. ¶ 48,—"may be wrong," because those turbines do not in fact practice one of the asserted wind turbine patents. Ex. 2, Morse Dep. 273:20-274:6. Similarly, his lack of experience in wind turbine design left him confused about what is shown in the figures of one of the asserted wind turbine patents. Specifically, Figure 2 of the asserted '776 patent includes circles (highlighted below) between elements 10 and 12, and 13 and 15:



Ex. 4, United States Patent No. 8,575,776 (highlighting added). Originally, Dr. Morse stated that those circles indicated "holes" for "ventilation." Ex. 2, Morse Dep. 235:5-25. But when asked if he was sure about that interpretation, he backed off and said "Yeah, those are holes," but "even if the ventilation isn't specifically shown in the figures, it's described in the specifications." *Id.*

235:20-25.  He then went back to his original opinion: "there's some ventilation that's shown in the figures."  *Id.* 236:1-5.  Then he flipped again: "yes, it shows a bolted connection."  *Id.* 238:12-18.  And again: "Figure 2 shows hole, not bolt."  *Id.* 239:4.  And then he reinterpreted the figure again: "Well, you can't actually tell because you can't actually see any holes in the connection structures in Figure 2."  *Id.* 239:10-12.  Dr. Morse's lack of expertise in design and development of wind turbines caused him to struggle to understand and interpret the patent drawings in an accurate and consistent way.

SGRE bears the burden of establishing that its expert's testimony is admissible by a preponderance of the evidence.  *See Bourjaily v. United States*, 483 U.S. 171, 175 (1987).  To be admissible under Federal Rule of Evidence 702, an expert's opinion testimony must be, among other things, based on that expert's specialized knowledge.  Fed. R. Evid. 702 & advisory committee notes; *see Daubert*, 509 U.S. at 589-97.  One factor typically considered is whether an expert is "proposing to testify about matters growing naturally and directly out of research they have conducted independent of the litigation, or whether they have developed their opinions expressly for purposes of testifying."  Fed. R. Evid. 702 advisory committee notes (citing *Daubert v. Merrell Dow Pharms., Inc.*, 43 F.3d 1311, 1317 (9th Cir. 1995)).  Here, Dr. Morse is simply not qualified as an expert on "the design and development of wind turbines."  Ex. 1, Morse Rpt. ¶ 5. He has conducted no research on wind turbine design or development outside of litigation, and instead "developed [his] opinions expressly for purposes of testifying."  Fed. R. Evid. 702 advisory committee notes (citing *Daubert*, 43 F.3d at 1317).

If this were a case about a fire, Dr. Morse might very well be qualified to offer an expert opinion as a fire investigator.  But this is a patent infringement case involving the design and development of wind turbines.  Dr. Morse's expertise cannot "help the trier of fact" understand

- 4 -

the wind turbine design and development issues in this case.  *See* Fed. R. Evid. 702(a) (requiring that "expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue" as condition for admissibility).  Given his lack of relevant education and experience, Dr. Morse does not have the expertise in wind turbine design and development to offer any helpful opinion to the jury.

Dr. Morse should thus be precluded from offering any expert opinion in this matter.

Dated:  December 16, 2021

Respectfully submitted,

*/s/ Katherine Kieckhafer*
Katherine P. Kieckhafer
WILMER CUTLER PICKERING
   HALE AND DORR LLP
60 State Street
Boston, Massachusetts 02109
Tel: (617) 526-6000
Fax: (617) 526-5000
Louis W. Tompros (BBO #657791)
Monica Grewal (BBO #659449)
Jason Liss (BBO #672902)
Scott W. Bertulli (BBO #690958)
Katherine P. Kieckhafer (BBO #693708)
Colleen McCullough (BBO #696455)
Rauvin A. Johl (BBO #698719)
Jeffrey M. Soller (BBO #703959)
Gary B. Howell-Walton (BBO #705470)

*Attorneys for Defendant General Electric Company*

## CERTIFICATE PURSUANT TO LOCAL RULE 7.1(A)(2)

I, Katherine P. Kieckhafer, hereby certify that counsel for General Electric Company and counsel for Siemens Gamesa Renewable Energy A/S conferred and attempted in good faith to resolve or narrow this issue.

*/s/ Katherine Kieckhafer*
Katherine P. Kieckhafer

## CERTIFICATE OF SERVICE

I, Katherine P. Kieckhafer, hereby certify that the foregoing document(s), filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF), on December 16, 2021.

*/s/ Katherine Kieckhafer*
Katherine P. Kieckhafer