**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

SIEMENS GAMESA RENEWABLE
ENERGY A/S,

      Plaintiff,

v.                                                            CASE NO. 1:21-cv-10216-WGY


GENERAL ELECTRIC CO. et al,

      Defendant.

                                                /

**<u>PLAINTIFF'S MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION TO
PRECLUDE CERTAIN OPINIONS OF GE'S DAMAGES EXPERT, CHRISTINE S.
MEYER</u>**

**TABLE OF CONTENTS**

**Contents**

I. INTRODUCTION ..................................................................................................1

II. LEGAL STANDARD............................................................................................2

 A. Expert Testimony.......................................................................................2

 B. Patent Damages..........................................................................................3

III. ARGUMENT........................................................................................................4

 A. While the date of the hypothetical negotiation is the date of first infringement, Dr. Meyer's proffered ▮▮▮▮ hypothetical negotiation date is wrong because GE's infringing turbine was merely in a ▮▮▮▮ ▮▮, and GE was not able to first infringe ▮▮▮▮. ..................................4

 B. Dr. Meyer's noninfringing-alternative opinion should be precluded because she has no proof that the alternative was or could have been available in the relevant time period and because she relies on a GE employee unqualified to form the basis for her opinion that the alternative is noninfringing. ......................6

  1. Dr. Meyer's opinion regarding her noninfringing alternative should be precluded as unreliable because she proffers no proof that the supposed alternative would have been available during the relevant period of infringement. .................................7

  2. Dr. Meyer's opinion regarding her noninfringing alternative is unreliable because it is based exclusively on her conversation with a GE employee whose technical pedigree is unknown to her and who, as far as she knows, never even read any claim of either asserted patent........................................................................................9

 C. Dr. Meyer's calculated royalty rate is unreliable because it is based on a document she did not investigate despite its questionable information and because, while she says that the document provides Haliade-X cost figures, she has no basis for this assertion, and it is contradicted by Dr. Slocum. .............10

  1. Dr. Meyers relies on one page of a PowerPoint for her royalty rate but talked to no one referenced in the document and no one who otherwise has personal knowledge of it, and she knows nothing about how or why the financial information in the document was generated. ....10

  2. Dr. Meyer's rate calculation is unreliable because she contends that the PowerPoint's cost information ▮▮▮▮ called the ▮▮▮▮ equates to cost for the Haliade-X, but she has no proof

ii

of this and Dr. Slocum's noninfringing-alternative opinion is inconsistent. ...................................................................................13

    D.    Because Dr. Meyer asserts that certain patent-license agreements and purchase orders are not comparable to the hypothetically-negotiated license, she should be precluded from testifying as to these documents. ...........................15

IV.    CONCLUSION.................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Cassidian Comms., Inc. v. microData GIS, Inc.*,
2013 WL 11322510, Civil Action No. 2:12-cv-00162-JRG (E.D. Tex. Dec. 3,
2013) ................................................................................................................................6

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
424 F.3d 1293 (Fed. Cir. 2005) ........................................................................................5

*Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*,
246 F.3d 1336 (Fed. Cir. 2001) ........................................................................................3

*Daubert v. Merrell Dow Pharms., Inc.*,
509 U.S. 579 (1993) ..........................................................................................................2

*General Elec. Co. v. Joiner*,
522 U.S. 136 (1997) ................................................................................3, 9, 13, 15

*Georgia-Pac. Corp. v. U.S. Plywood Corp.*,
318 F. Supp. 1116 (S.D.N.Y. 1970) ...............................................................................16

*Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*,
446 F.2d 295 (2d Cir. 1971) ...........................................................................................16

*Grain Processing Corp. v. Am. Maize-Prod. Co.*,
185 F.3d 1341 (Fed. Cir. 1999) ......................................................................3, 4, 7, 8, 9

*Hochen v. Bobst Grp., Inc.*,
290 F.3d 446 (1st Cir. 2002) .............................................................................................2

*LaserDynamics, Inc. v. Quanta Computers, Inc.*,
694 F.3d 51 (Fed. Cir. 2012) .................................................................................4, 5, 16

*Lucent Techs., Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009) ..............................................................................3, 4, 15

*M2M Solutions LLC v. Enfora, Inc.*,
167 F. Supp. 3d 665 (D. Del. 2016) ...............................................................................16

*McGovern v. Brigham and Women's Hosp.*,
584 F. Supp. 2d 418 (D. Mass. 2008) ...................................................2, 3, 9, 13, 14, 15

*Open Text S.A. v. Box, Inc.*,
Case No. 13-cv-04910-JD, 2015 WL 349197 (N.D. Cal. Jan. 23, 2015) ......................16

*Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*,
    575 F.2d 1152 (6th Cir. 1978) ....................................................................................3, 7

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010)........................................................................................4

*Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*,
    2019 WL 5310220, C.A. No. 17-189-LPS-CJB (D. Del. Oct. 21, 2019) (Stark,
    J.)....................................................................................................................................6

*State Indus., Inc. v. Mor-Flo Indus., Inc.*,
    883 F.2d 1573 (Fed. Cir. 1989)......................................................................................4

*United States v. Tetioukhine*,
    725 F.3d 1 (1st Cir. 2013)...............................................................................................3

*Wang Labs., Inc. v. Toshiba Corp.*,
    993 F.2d 858 (Fed. Cir. 1993)....................................................................................4, 5

**Statutes**

35 U.S.C. § 271(a) .................................................................................................................5, 6

35 U.S.C. § 284.........................................................................................................................3

**Rules**

Fed. R. Civ. P. 26(a)(2)(B)(i).................................................................................................3

Fed. R. Evid. 702 ..................................................................................................................2, 3

I.    **INTRODUCTION**

The Court should preclude GE's damages expert, Christine S. Meyer, from offering opinions regarding: (1) the incorrect date of hypothetical negotiation; (2) the existence of a noninfringing alternative; (3) her calculated royalty rate; and (4) certain patent licenses and purchase orders.

While black-letter law dictates that the date of hypothetical negotiation is the date of first infringement, Dr. Meyer proffers a first-infringement date of ████████, a point in time when GE's accused Haliade-X wind turbine ██████████████. Because the Haliade-X had not been made, used, offered for sale, or sold in the United States, or imported into the United States, in ████████, Dr. Meyer's opinion that the date of the hypothetical negotiation is ████████ should be precluded as unreliable.

Dr. Meyer's opinions related to her proffered noninfringing alternative should be excluded as unreliable for two independent reasons. First, Dr. Meyer offers no proof that her proffered noninfringing alternative would have been available during the relevant period of infringement. Second, Dr. Meyer relies on her conversation with a GE employee, Mr. ██████████████, as to whether a particular ████████ qualifies as a noninfringing alternative when such analysis is properly the province of a technical expert and not of an unqualified fact witness who, on this record, never read the claims of either asserted patent.

Dr. Meyer's calculated royalty rate is also unreliable because it is based on only a single nine-page PowerPoint that she did not investigate despite its questionable information and because, while she says that the PowerPoint provides Haliade-X cost figures, she performed no investigation to understand those cost figures and, particularly, their reliability. Furthermore, Dr. Meyers assumes with no investigation that the PowerPoint's cost information for a ████████ ████ called the ██████████ somehow equates to cost figures for the accused Haliade-X. Dr.

1

Meyer has no proof of this, and GE's technical expert, Dr. Slocum, contradicts Dr. Meyer's assumption because his opinion is that the ███████ is a noninfringing alternative to the Haliade-X.

Finally, Dr. Meyer should be precluded from testifying as to certain license agreements and purchase orders that both parties' experts agree are not comparable to the hypothetically-negotiated license because the law is crystal clear that noncomparable licenses have no place in the reasonable-royalty analysis.

## II.    LEGAL STANDARD

### A.    Expert Testimony

Under the Federal Rules of Evidence, "[a] witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if . . . the testimony is based on sufficient facts or data." Fed. R. Evid. 702. "Rule 702 . . . assigns to the trial judge the responsibility for ensuring that an expert's testimony as to scientific, technical, or other specialized knowledge both rests on a reliable foundation and is relevant to the task at hand." *McGovern v. Brigham and Women's Hosp.*, 584 F. Supp. 2d 418, 423 (D. Mass. 2008) (quoting *Hochen v. Bobst Grp., Inc.*, 290 F.3d 446, 452 (1st Cir. 2002)) (internal quotations omitted). "To fulfill this gatekeeping role, a court first must determine whether the expert possesses some specialized knowledge such that his or her testimony will be helpful to the trier of fact and, if so, whether that knowledge arises from reliable principles and methods applied in a reliable manner." *Id.* (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 590–91 (1993). "The ultimate purpose of the *Daubert* inquiry is to determine whether the testimony of the expert would be helpful to the jury in resolving a fact in issue." *Id.* (quoting *Hochen*, 290 F.3d at 452).

2

To satisfy the evidentiary standards of Rule 702, experts are required to supply a written report that includes "a complete statement of all opinions the witness will express and the basis and reasons for them. . . ." Fed. R. Civ. P. 26(a)(2)(B)(i). A court may exclude expert opinion when it is "connected to existing data only by the *ipse dixit* of the expert." *See McGovern*, 584 F. Supp. 2d at 424 (quoting *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)). As the proponent of the evidence, GE has the burden of demonstrating its admissibility. *United States v. Tetioukhine*, 725 F.3d 1, 6 (1st Cir. 2013).

### B.      Patent Damages

Upon a finding of infringement, "the court shall award the claimant damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer, together with interest and costs as fixed by the court." 35 U.S.C. § 284. A patentee may seek damages in the form of patentee's lost profits and/or a reasonable royalty that patentee "would have received through arms-length bargaining." *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (citations omitted).

As for recovering lost profits for patent infringement, a patentee bears the burden of showing a "a reasonable probability that 'but for' the infringing activity, the patentee would have made the infringer's sales." *Crystal Semiconductor Corp. v. TriTech Microelectronics Int'l, Inc.*, 246 F.3d 1336, 1353 (Fed. Cir. 2001) (citations omitted). Such "but-for" causation can be proven using a test applied in *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978). One factor of this test requires the patentee to show an "absence of acceptable noninfringing substitutes." *Panduit*, 575 F.2d at 1156. The "but for" inquiry in this regard, therefore, "requires a reconstruction of the market, as it would have developed absent the infringing product, to determine what [sales] the patentee 'would . . . have made.'" *Grain Processing Corp. v. Am. Maize-Prod. Co.*, 185 F.3d 1341, 1350 (Fed. Cir. 1999).

"[T]o be an acceptable non-infringing substitute, the product or process must have been available *or* on the market at the time of infringement." *Id.* at 1349 (emphasis in original). "The critical time period for determining availability of an alternative is the period of infringement for which the patent owner claims damages, *i.e.*, the 'accounting period.'" *Id.* at 1353 (citing *State Indus., Inc. v. Mor-Flo Indus., Inc.*, 883 F.2d 1573, 1579 (Fed. Cir. 1989)). "When an alleged alternative is not on the market during the accounting period, a trial court may reasonably infer that it was not available as a noninfringing substitute at that time." *Id.* The accused infringer must "overcome this inference by showing that the substitute was available during the accounting period." *Id.*

"A 'reasonable royalty' derives from a hypothetical negotiation between the patentee and the infringer when the infringement began." *ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 868 (Fed. Cir. 2010) (citations omitted). A hypothetical negotiation "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement began." *Lucent*, 580 F.3d at 1324 (citations omitted). "The correct determination of the hypothetical negotiation date is essential for properly assessing damages." *LaserDynamics, Inc. v. Quanta Computers, Inc.*, 694 F.3d 51, 75 (Fed. Cir. 2012) (citations omitted). "[T]he date of the hypothetical negotiation is the date that the infringement began." *Id.* (holding that expert's hypothetical-negotiation date was wrong because it did not reflect date of first infringement); *Wang Labs., Inc. v. Toshiba Corp.*, 993 F.2d 858, 870 (Fed. Cir. 1993) (citations omitted) (stating that "[t]he key element in setting a reasonable royalty . . . is the necessity for return to the date when the infringement began").

## III.    ARGUMENT

     **A.**     **While the date of the hypothetical negotiation is the date of first infringement, Dr. Meyer's proffered ███████ hypothetical negotiation date is wrong**

> **because GE's infringing turbine was merely** ███████████████ **, and GE was not able to first infringe** ██████████ **.**

Dr. Meyer's proffered date of the hypothetical negotiation is wrong and therefore Dr. Meyer's opinions based on this date should be precluded as unreliable.

Dr. Meyer contends that the date of the hypothetical negotiation (i.e., the date of GE's first infringement of the two asserted patents) is "████████." Ex. A (Meyer Rep.) ¶ 68. But at that time, the accused GE Haliade-X wind turbine ████████████████. In ████████, GE at most had a ████████████████████████████████ meaning that ████████████ ████████████████████████████████ *See* Ex. B (████████ Tr.) at 19:3-11; Ex. C (GE_SGRE_000113144) (████████ document titled ████████ ████████ showing concepts being studied). But even ████████, ████████████████ ████████████████████████. Ex. D (Meyer Rough Tr.) at 69:9-21. Furthermore, Dr. Meyer could not even identify any component or part of the Haliade-X that was actually made ████████. Ex. D (Meyer Rough Tr.) at 68:25–70:11; 71:3-12. There is no evidence that any part of the Haliade-X had been made, used, offered for sale, or sold in the United States, or imported into the United States ████.

Black-letter law dictates that "the date of the hypothetical negotiation is the date that the infringement began." *LaserDynamics*, 694 F.3d at 75 (finding that expert's hypothetical-negotiation date was wrong because it did not reflect date of first infringement); *Wang Labs.*, 993 F.2d at 870. Black-letter law further mandates that infringement of a claim to an apparatus (here, a wind turbine or a rotor for a wind turbine) occurs only when an apparatus meeting each and every limitation of a patent's claim is made, used, offered for sale, or sold in the United States, or imported into the United States. 35 U.S.C. § 271(a); *Cross Med. Prods., Inc. v. Medtronic Sofamor*

5

*Danek, Inc.*, 424 F.3d 1293, 1310 (Fed. Cir. 2005). Dr. Meyer identifies no such infringing activity because none of this had happened as of ███████.[1]

Dr. Meyer appears content to rely only on some misguided notion that merely putting designs on paper is an act of infringement. Ex. A (Meyer Rep.) ¶ 68; *see also id.* ¶ 34 (stating that

████████████████████████████████████████████████

██████. But at least under the facts of this case, U.S. infringement law does not encompass thinking about, or noodling over, wind turbine designs. 35 U.S.C. § 271(a).

Because there is no evidence that, ███████, GE had made, used, sold, or offered for sale any Haliade-X or any Haliade-X rotor hub in the United States, or imported any Haliade-X or any Haliade-X rotor hub into the United States, Dr. Meyer's opinion that the date of the hypothetical negotiation ███████ should be precluded as unreliable. *Roche Diagnostics Corp. v. Meso Scale Diagnostics, LLC*, 2019 WL 5310220, C.A. No. 17-189-LPS-CJB, at *2–3 (D. Del. Oct. 21, 2019) (Stark, J.) (precluding damages expert's opinion based on wrong date of first infringement); *Cassidian Comms., Inc. v. microData GIS, Inc.*, 2013 WL 11322510, Civil Action No. 2:12-cv-00162-JRG, at *2 (E.D. Tex. Dec. 3, 2013) (excluding "expert opinion in its entirety" because it "employed a fundamentally flawed methodology" by "calculat[ing] reasonable royalty based on an incorrect hypothetical negotiation date").

**B.     Dr. Meyer's noninfringing-alternative opinion should be precluded because she has no proof that the alternative was or could have been available in the**

---

[1] As SGRE's expert explains, GE's infringement ██████████████████████████████████ ████████████████████. *See* Ex. E (Schenk Amended Rep.) ¶ 171. These offers constitute the first offer for sale of the Haliade-X in the United States and therefore the date of first infringement. Consequently, the correct date for the hypothetical negotiation ████████████████. *See id.* Alternatively, the date of first infringement is ██████████████████████████████████████. *Id.* ¶ 171 n.320.

**relevant time period and because she relies on a GE employee unqualified to form the basis for her opinion that the alternative is noninfringing.**

For lost-profits damages, SGRE bears the burden of proving that, during the period of infringement, GE had no acceptable noninfringing alternative. *Panduit*, 575 F.2d at 1156. For her part, Dr. Meyer attempts to rebut SGRE's proof that there was no acceptable noninfringing alternative available to GE, alleging that in fact there was such an alternative. But Dr. Meyer's opinions related to her proffered non-infringing alternative should be excluded as unreliable for two independent reasons. First, Dr. Meyer offers no proof that her proffered noninfringing alternative would have been available during the period of infringement. *See* Section III.B.1. Second, Dr. Meyer relies on her conversation with a GE employee, Mr. ███████████, as to whether a particular conceptual design qualifies as a noninfringing alternative when such analysis is properly the province of a technical expert and not of an unqualified fact witness who never read the claims of either asserted patent. *See* Section III.B.2.

> **1.    Dr. Meyer's opinion regarding her noninfringing alternative should be precluded as unreliable because she proffers no proof that the supposed alternative would have been available during the relevant period of infringement.**

Dr. Meyer offers no evidence that her alleged non-infringing alternative was available or could have been available on the market during the relevant timeframe of infringement (the "accounting period") and, therefore, Dr. Meyer's testimony relying on the purported noninfringing alternative should be precluded as unreliable. *See Grain Processing*, 185 F.3d at 1349, 1353.

Dr. Meyer identifies the so-called ████████████████████████ as a supposed non-infringing alternative. Ex. A (Meyer Rep.) ¶ 35 n.38. It is undisputed, however, that the ████████████████████████ has never been made, let alone, been on the market. Because this purported noninfringing alternative is "not on the market during the accounting

period," the Court "may reasonably infer that it was not available as a noninfringing substitute at that time." *Grain Processing*, 185 F.3d at 1353.

Dr. Meyer, however, may overcome this inference by showing that the alleged substitute (here, the ███████████████████████) could have been available during the accounting period. *See id.* But the record nowhere supports such a showing and, in fact, amply demonstrates that the ███████████ could not have been on the market during the accounting period.

████████████████████████████████████████████████

████████████████████████████. *See* Ex. F (GE's Third Supplemental Responses and Objections to SGRE's Interrogatories (Nos. 1–25)) at 49–50; Ex. G (Olesen Tr.) at 62:21-23. This period stands as a proxy for how long it would have taken GE to redesign the Haliade-X and launch its noninfringing alternative upon its first impetus to do so, namely, the date of its first infringement ███████████. Thus, GE would not have been able to implement any alternative until about between ███████████████. But during the accounting period of GE's infringement starting in ██

████████████████████████████████████████████

████████████████████. *See* Ex. E (Schenk Amended Rep.) ¶¶ 86, 88. SGRE seeks lost profits for the revenue that GE received ████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████. *See id.* ¶ 114.

Recognizing this problem, and as explained above, Dr. Meyer conveniently chose to make ███████████ the date of first infringement because this would supposedly allow GE more time to redesign the Haliade-X so that it still would be capable of entering the ████████████████

███████████. But Dr. Meyer does not explain – nor could she based on the current record – how GE's alternative would have been available if GE had begun redesigning ███████████, the proper

8

date of first infringement. Therefore, her opinion that an acceptable noninfringing alternative was available is unreliable and should be precluded. *See Grain Processing*, 185 F.3d at 1353. *See also McGovern*, 584 F. Supp. 2d at 424 (quoting *General Elec.*, 522 U.S. at 146) (stating that expert opinion need not be admitted when it is "connected to existing data only by the *ipse dixit* of the expert.").

      **2.**      **Dr. Meyer's opinion regarding her noninfringing alternative is unreliable because it is based exclusively on her conversation with a GE employee whose technical pedigree is unknown to her and who, as far as she knows, never even read any claim of either asserted patent.**

Dr. Meyer's opinion that the ▮▮▮▮▮▮▮▮ is an acceptable noninfringing alternative should be precluded as unreliable because the sole basis for the opinion is a conversation she had with a GE employee, Mr. ▮▮▮▮▮▮▮▮, but Mr. ▮▮▮▮▮ is not qualified to make a determination that the ▮▮▮▮▮▮▮ is noninfringing, and Dr. Meyer did no investigation to determine if Mr. ▮▮▮▮▮ was qualified to opine on the topic of infringement. *See* Ex. A (Meyer Rep.) ¶¶ 34–38 & footnotes; *See, e.g.*, Ex. D (Meyer Rough Tr.) at 24:15-21, 27:8-11.

Dr. Meyer, an economist with no relevant technical expertise, is not qualified to determine whether the ▮▮▮▮▮▮▮ is a noninfringing alternative. For her part, Dr. Meyer nowhere contends otherwise. She instead solely relies on Mr. ▮▮▮▮▮, GE's current ▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Ex. A (Meyer Rep.) ¶¶ 10, 35. Dr. Meyer states that, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮."[2] *Id.* ¶¶ 10, 35 & footnotes 35, 38. But Dr. Meyer lays no foundation showing why she thinks it appropriate and reliable for her to rely on ▮▮▮▮▮▮ in the first place. Dr. Meyer does not even know if ▮▮▮▮▮▮ has a technical degree. Ex. D (Meyer Rough Tr.) at 24:15-21. Furthermore, Dr. Meyer does not know if ▮

---

[2] The asserted patents in this action are U.S. patent nos. 8,575,776 and 9,279,413.

9

██████ read any claim of either asserted patent. *Id.* at 27:8-11. And the record is devoid of any evidence as to whether Mr. ████████, a non-lawyer located in ████████████ (Ex. B (███████ Tr.) at 8:3-4), read the Court's claim construction ruling, understands what claim construction means in the infringement analysis under U.S. law, or knows how to perform a proper infringement analysis under U.S. law.

For these reasons, Dr. Meyer's opinion that the ██████████████ is an acceptable noninfringing alternative is unreliable, and she should be precluded from offering testimony regarding it.

> **C.** **Dr. Meyer's calculated royalty rate is unreliable because it is based on a document she did not investigate despite its questionable information and because, while she says that the document provides Haliade-X cost figures, she has no basis for this assertion, and it is contradicted by Dr. Slocum.**
>
> **1.** **Dr. Meyers relies on one page of a PowerPoint for her royalty rate but talked to no one referenced in the document and no one who otherwise has personal knowledge of it, and she knows nothing about how or why the financial information in the document was generated.**

In forming her opinion as to a reasonable-royalty rate, Dr. Meyer relies heavily on a ████████████, nine-page PowerPoint document and her conversation with Mr. ████████ purportedly about this document. Ex. A (Meyer Rep.) ¶ 35 n.38 (citing Ex. C (GE_SGRE_000113144) at slide 8); Ex. D (Meyer Rough Tr.) at 92:2-5; Ex. B (███████ Tr.) at 19:3-6. But because Dr. Meyer knows virtually nothing about this document aside from what it says in its four corners and because ███████████████████████████████████████████████████ (and on this record appears to have no personal knowledge of the document), Dr. Meyer's reasonable-royalty opinion is unreliable and should be precluded.

The nine-page PowerPoint is titled ██████████████████ and includes one slide (slide 8) that looks like someone's back-of-napkin cost comparison between certain ████████████████████████████████████████. Ex. C (GE_SGRE_000113144) at

GE_SGRE_000113151.  In determining her reasonable-royalty rate, Dr. Meyer purports to subtract the lower cost of a portion of the Haliade-X from the higher cost of the same portion of the supposed ███████████ noninfringing alternative.  Ex. A (Meyer Rep.) ¶ 35 & n.38. She then uses this resulting cost information as her maximum reasonable royalty rate, contending that GE would not have been willing to pay more than that to SGRE at the hypothetical negotiation because it would opt to redesign instead.  *Id.* ¶ 35 & n.38, ¶ 72.

The slide with the relevant cost information that forms the entire basis for the math Dr. Meyer performs to arrive at the amount of her reasonable royalty includes Spanish writing that she did not bother to translate as well as emojis:



*See* Ex. A (Meyer Rep.) ¶ 35 n.38; Ex. D (Meyer R. Tr.) at 113:22–114:8; Ex. C (GE_SGRE_000113144) at GE_SGRE_000113151 (below).[3]  This is a far cry from sophisticated

---

[3] At Dr. Meyer's deposition, Ex. C was marked, a black and white copy bearing the Bates numbers GE_SGRE_000113144-GE_SGRE_000113152.  Inserted here, and attached as Ex. H (███████ 15), is the native PowerPoint version of this document that was produced in this action and was marked as ███████ 15.  SGRE includes this version here for readability.  *See* Ex. A (Meyer Rep.) ¶ 35 n.38 (stating ████████ ███████ (GE_SGRE_000113144 at slide 8 – ███████ ███████

spreadsheet analysis one would expect of General Electric Company and a damages expert in a patent case.

Overall, the document is a barebones PowerPoint presentation, not a detailed financial analysis. Notably, the document lists ███████████████████████████████ ██████████████████████████████ but no one from finance, accounting or the like. Ex. C (GE_SGRE_000113144) at GE_SGRE_000113145. Furthermore, Dr. Meyer did not know whether either of the two authors listed on the cover slide ████████████████████ ████████████████████████████ " Ex. D (Meyer Rough Tr.) at 96:21–97:1. ██

███████████████████████████████████████████████████

██. Ex. D (Meyer Rough Tr.) at 95:25-96:7; 101:11–102:6. ████████████████

████████████████████. *Id.* at 93:18–95:2.

Furthermore, Dr. Meyer does not know ███████████████████████. ████

███████████████████████████████████████

████████████████████████████████. *Id.* at 95:19-96:19, 97:23-98:7, 100:2–6, 116:1-10. Dr. Meyer did not remember ███████████████████████████

████████████████████████ (*id.* at 102:7–17); and she could not say ██████████████████████████████████

███████████████. *Id.* at 102:18–103:6. Dr. Meyer was ███████████████

███████████████████████████████████. *Id.* at 111:11-113:20. Dr. Meyer did not even know ████████████████████

███████████████. *Id.* at 119:14–18.

---

[4] On slides 6 through 8 (8 being the slide relied upon by Dr. Meyer for her reasonable-royalty analysis) it says ████ ████████████████ calling into question whether this is a draft or a final document. Ex. H (████████) at slides 6–8. This record will never know because Dr. Meyer did not inquire.

12

As for Mr. ██████, Dr. Meyer's report says nothing about what he told her about the document in her conversation with him and, at deposition, ████████████████████ ████████████████████. *See, e.g.*, Ex. A (Meyer Rep.) ¶¶ 35–38; Ex. D (Meyer Rough Tr.) 99:9-17, 108:23-109:7.   Furthermore, Mr. ████████████████ ████████████████████████████████ ████████████████████. Ex. C (GE_SGRE_000113144) at GE_SGRE_000113145; Ex. D. (Meyer Rough Tr.) at 93:7–14.   In fact, ████████████████ ████████████████████. *Id.* at 92:17–20.

Moreover, it is not clear based on the record – and Dr. Meyer could provide no reason – why she chose to rely on this document dated ████████, as opposed to documents ████████ ████████████████████████████████ ████. *See, e.g.*, Ex. I[5] (GE_SGRE_000271410 – GE_SGRE_000271415) at GE_SGRE_000271415.   Dr. Meyer does not even list in her "Materials Reviewed" one such document, namely, GE_SGRE_000271410 that is ████████████████ and ████████ ████████████ relied upon by Dr. Meyer. *Id.*; Ex. A (Meyer Rep.) at Ex. 2.

In sum, because the document that Dr. Meyer relies on is untethered from any evidence of reliability, Dr. Meyer should be precluded from relying on it.   *See also McGovern*, 584 F. Supp. 2d at 424 (quoting *General Elec.*, 522 U.S. at 146) (stating that expert opinion need not be admitted when it is "connected to existing data only by the *ipse dixit* of the expert.").

> **2.      Dr. Meyer's rate calculation is unreliable because she contends that the PowerPoint's cost information for a conceptual design called the ████████ equates to cost for the Haliade-X, but she has no proof of**

---

[5] For readability, SGRE has included the native PowerPoint produced by GE as Exhibit J.

**this and Dr. Slocum's noninfringing-alternative opinion is inconsistent.**

As explained above, Dr. Meyer's royalty-rate opinion is purported to be based on the difference in cost between the Haliade-X and the ████████████ as set forth in the ██████ ████████████████████████████████████. But the PowerPoint nowhere references cost of the Haliade-X.   Instead, Dr. Meyer assumes that the ████████████████████████████ ████████████████████████████████████████. For this reason, Dr. Meyer's reasonable-royalty rate is unreliable.

Dr. Meyer states that "████████████████████████████████████ ██████" Ex. A (Meyer Rep.) ¶ 35 n.38.  Dr. Meyer continues that ████████████████ ████████████████████████████████████████████████ ████████████████████." *Id.* ████████████████████████ ████████████████████████. In doing so, Dr. Meyer improperly equates the ████ ████████ option with the Haliade-X and determines what it would have cost to manufacture the alleged non-infringing alternative ████████████ as compared to the accused product (the Haliade-X).  Based on this, Dr. Meyer calculates GE's reasonable royalty rate.

But there is no evidence of record indicating that the ████████████████████ is the Haliade-X.  In fact, the testimony shows that the ████████████████████████████ ██. Rather, the "████████████████████████████████." Ex. K (████████ Tr.) at 167:10. Dr. Meyer assumes that an ████████████████ the same as the ████████████████ ████████████████████████████████████████████. But for all this record knows, the Haliade-X is to *homo sapiens* what the ████████████████████ is to *homo erectus* – that is, different enough to warrant fulsome investigation.

14

For his part, GE's Dr. Slocum impliedly confirms the unreliability of Dr. Meyer's opinion. Dr. Slocum contends that not only are the Haliade-X and the ███████████████████████ not the same but also that the ███████████ is a noninfringing alternative to the Haliade-X. In this regard, Dr. Slocum opined:



Ex. L (Slocum Rep.) ¶ 505. Because Dr. Slocum alleges that the ███████████████████ is an acceptable noninfringing alternative, it cannot also be the same as the actual Haliade-X design.

Because Dr. Meyer performed no fulsome (or any) investigation as to the differences between the ████████████████████████ and the Haliade-X and because her assumption of similarity is contradicted by the opinion of Dr. Slocum, her royalty-rate opinion is unreliable and should be precluded. *See also McGovern*, 584 F. Supp. 2d at 424 (quoting *General Elec.*, 522 U.S. at 146) (stating that expert opinion need not be admitted when it is "connected to existing data only by the *ipse dixit* of the expert.").

**D.    Because Dr. Meyer asserts that certain patent-license agreements and purchase orders are not comparable to the hypothetically-negotiated license, she should be precluded from testifying as to these documents.**

Dr. Meyer should be precluded from testifying as to certain license agreements and purchase orders because she admits that her opinion is that purchase orders between ██████████ ██, a license agreement between ████████████████████████████████, and a license agreement between ██████████████████ produced in this case are not "comparable to the hypothetical license at issue in suit." *See Lucent*, 580 F.3d at 1325 (stating that the second *Georgia-Pacific* factor "examines whether the licenses relied on by the patentee in proving

damages are sufficiently comparable to the hypothetical license at issue in suit."); *Georgia-Pac. Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), modified sub nom. *Georgia-Pac. Corp. v. U.S. Plywood-Champion Papers, Inc.*, 446 F.2d 295 (2d Cir. 1971) (identifying the second factor as "rates paid by the licensee for the use of other patents comparable to the patent[s] in suit."). *See, e.g.*, Ex. A (Meyer Rep.) ¶¶ 75–77.

Dr. Meyer states that she "█████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

█████████████████████" Ex. A (Meyer Rep.) ¶ 77; *id.* ¶ 76. She further admits that she "████████

████████████████████████████████████████████████████████████

███████████████" *Id.* Because Dr. Meyer contends that these license agreements and purchase orders are not comparable, she should be precluded from testifying about them for any purpose. The law is crystal clear – incomparable patent license agreements "simply [have] no place in this case." *LaserDynamics*, 694 F.3d at 80 (citations omitted) (stating that the district court's "ruling erroneously permitted continued reliance on this [licensing] evidence where comparability between it and a hypothetical license to the '981 Patent was absent."). *See also M2M Solutions LLC v. Enfora, Inc.*, 167 F. Supp. 3d 665, 678–79 (D. Del. 2016) (excluding testimony regarding non-comparable license stating "Defendants cannot escape [the] requirement [that a license must be proven comparable] by suggesting that the incomparable licenses only played a minor role as a quantitative reference point, instead of being a driving force in the reasonable royalty estimate."); *Open Text S.A. v. Box, Inc.*, Case No. 13-cv-04910-JD, 2015 WL 349197, at *5 (N.D. Cal. Jan. 23, 2015) (precluding expert from testifying as to admittedly noncomparable licenses "across the board, including any attempt to mention the non-comparable licenses as 'background' evidence"

16

where "[plaintiff's and expert's] unwillingness to say that [expert] relied on the licenses—apparently based on a recognition that they would not qualify as comparable licenses under the Federal Circuit's precedents—leaves no room for some sort of soft or 'suggestive' reliance.").

## IV.    CONCLUSION

For the reasons set forth herein, SGRE respectfully requests that this Court grant this motion and preclude the testimony of GE's damages expert, Dr. Meyer, regarding: (1) the incorrect date of hypothetical negotiation; (2) the existence of a noninfringing alternative; (3) her calculated royalty rate; and (4) certain patent licenses and purchase orders.

Dated: December 16, 2021                Respectfully submitted,

*s/ Cory C. Bell*
Cory C. Bell, Esq.
Alissa K. Lipton, Esq.
Finnegan Henderson Farabow
Garrett & Dunner, LLP
Two Seaport Lane
Boston, Massachusetts 02210
Telephone (617) 646-1600
Facsimile (617) 646-1666
cory.bell@finnegan.com
alissa.lipton@finnegan.com

Robert W. Thielhelm, Jr., Esq. (PHV)
Florida Bar No. 889679
Baker & Hostetler LLP
200 S. Orange Avenue, Suite 2300
Orlando, Florida 32801
Telephone (407) 649-4000
Facsimile (407) 841-0168
rthielhelm@bakerlaw.com

Leif R. Sigmond, Jr., Esq. (PHV)
Michael D. Gannon, Esq. (PHV)
Douglas S. Rupert, Esq. (PHV)
Stephanie J. Nelson, Esq. (PHV)
Baker & Hostetler LLP
One N. Wacker Drive, Suite 4500

Chicago, Illinois 60606
Telephone (312) 416-6200
Facsimile (312) 416-6201
lsigmond@bakerlaw.com
mgannon@bakerlaw.com
drupert@bakerlaw.com

Daniel J. Goettle, Esq. (PHV)
Stephanie M. Hatzikyriakou, Esq. (PHV)
Primary:  shatzikyriakou@bakerlaw.com
BAKER & HOSTETLER LLP
Cira Centre, 12th Floor
2929 Arch Street
Philadelphia, PA 19104
Tel:  (215) 568-3100
Fax:  (215) 568-3439

*Attorneys for Plaintiff, Siemens*
*Gamesa Renewable Energy A/S*

18

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that the foregoing documents filed through the ECF system will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF) this 16th day of December, 2021.

*/s/ Stephanie M. Hatzikyriakou*
Stephanie M. Hatzikyriakou

19