UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                               )
SIEMENS GAMESA                 )
RENEWABLE ENERGY A/S,          )
                               )
              Plaintiff,       )
                               )
         v.                    )        CIVIL ACTION
                               )        NO. 21-10216-WGY
GENERAL ELECTRIC CO.,          )
                               )
              Defendant.       )
_____)
```

YOUNG, D.J.                                      May 23, 2022

**MEMORANDUM & ORDER**

## I.  INTRODUCTION

This matter is before the Court pursuant to the Defendant General Electric's ("GE") Motion for Reconsideration (the "Motion for Reconsideration"), Def. GE's Mot. Recons. Ct.'s Am. Claim Construction Order ("Mot. Reconsideration"), ECF No. 307, and its Motion for Clarification (the "Motion for Clarification"), Def. GE's Mot. Clarification Ct.'s April 4, 2022 Order ("Mot. Clarification"), ECF No. 310.  Both motions were filed in response to the Court's April 4, 2022 Order.  See April 4, 2022 Order, ECF No. 306.

GE's Motion for Reconsideration is hereby DENIED, and its Motion for Clarification is ALLOWED.

[1]

## II.  PROCEDURAL HISTORY

Siemens Gamesa Renewable Energy A/S ("Siemens") owns United States Patent No. 9,279,413 (the "'413 Patent") and United States Patent No. 8,575,776 (the "'776 Patent").  First Am. Compl. Patent Infringement & Jury Demand ¶¶ 1, 23, 32, ECF No. 95; see generally id. Ex. A, U.S. Patent No. 8,575,776 ("'776 Patent"), ECF No. 95-1; id. Ex. B, U.S. Patent No. 9,279,413, ECF No. 95-2.

Siemens sued GE for infringement of the '413 Patent and '776 Patent in the United States District Court for the Middle District of Florida.  Compl. Patent Infringement & Jury Demand, ECF No. 1.  The case was later transferred to this Court by consent.  February 4, 2021 Order, ECF No. 43.

This Court held a Markman hearing on September 16, 2021.  See generally Tr. Markman Hr'g, ECF No. 113.  After oral argument, this Court construed six terms and took one under advisement.  Id. 42:19-44:1.  On October 28, 2021, this Court issued a Markman Order construing the remaining term and explaining its other constructions.  See Siemens Gamesa Renewable Energy A/S v. Gen. Elec. Co., No. CV 21-10216-WGY, 2021 WL 5040409 (D. Mass. Oct. 28, 2021).

Subsequently, the parties filed six separate motions for summary judgment.  GE filed three motions for summary judgment against Siemens's infringement claims: (1) one based on the lack

of an infringing act within the United States; and two based on
non-infringement of the claim terms of the (2) '413 Patent, and
the (3) '776 Patent.  Def. GE's Mot. Summ. J. Non-Infringement
Lack U.S. Act, ECF No. 148; Def. GE's Mot. Summ. J. Non-
Infringement '776 Patent, ECF No. 157; Def. GE's Mot. Summ. J.
Non-Infringement '413 Patent, ECF No. 169.  Siemens filed two
motions: (1) to preclude GE from utilizing certain prior art
references; and (2) for summary judgment on counts V and VI of
GE's counterclaims alleging inequitable conduct by Siemens.  See
Pl.'s Mot. Summ. J. Certain References Do Not Constitute Prior
Art, ECF No. 146; Pl.'s Mot. Summ. J. No Inequitable Conduct,
ECF No. 141.

This Court held a hearing on March 24, 2022, and
tentatively denied all of the motions, but took the matter under
advisement.  See Electronic Clerk's Notes, ECF No. 303.  On
March 30, 2022, at the final pre-trial conference for this
matter, this Court denied the six summary judgment motions and
announced clarifications for two claim terms; the Court also
confirmed it would issue a formal order on the record
memorializing each of these actions.  See Electronic Clerk's
Notes, ECF No. 305.  On April 4, 2022, the Court issued an order
(the "April 4, 2022 Order") recording the denial of the motions
and its Markman clarifications for two of the claim terms of the

'776 Patent: "a circular inner base structure" and "hollow chamber."  <u>See</u> April 4, 2022 Order 2-3.

On April 13, 2022, GE filed a Motion for Reconsideration, asking this Court to retract its explanations for each construction provided in its April 4, 2022 Order.  <u>See generally</u> Mot. Reconsideration.  GE also filed a Motion for Clarification on the basis for the denial of its summary judgment motion for lack of an infringing act within the United States.  <u>See</u> Mot. Clarification 2.  The parties fully briefed each of these motions.  <u>See</u> Mem. Supp. Def. GE's Mot. Recons. Ct.'s Am. Claim Construction Order ("Mem. Supp. Mot. Reconsideration"), ECF No. 308; Pl. SGRE's Opp'n Def. GE's Mot. Recons. Ct.'s April 4, 2022 Order Clarifying Claim Construction ("Mem. Opp'n Mot. Reconsideration"), ECF No. 315; Pl. SGRE's Opp'n Def.'s Mot. Clarification Ct.'s April 4, 2022 Order ("Siemens's Opp'n Mot. Clarification"), ECF No. 316.

After consideration of the parties' submissions, GE's Motion for Reconsideration is DENIED and its Motion for Clarification is ALLOWED as set forth below.

## III. MOTION FOR RECONSIDERATION

GE requests relief from the order pursuant to Federal Rule of Civil Procedure 60(b) ("Rule 60(b)"), citing specifically sub-sections (1) and (6).  Mem. Supp. Mot. Reconsideration 3. Rule 60(b) allows courts to correct orders <u>sua sponte</u> or on

motion to remedy "mistake, inadvertence, surprise or excusable neglect," Fed. R. Civ. P. Rule 60(b)(1), and for "any other reason that justifies relief," id. 60(b)(6).  Rule 60(b) is a "vehicle for extraordinary relief," which should be utilized only under "extraordinary circumstances."  Davila-Alvarez v. Escuela de Medicina Universidad Central del Caribe, 257 F.3d 58, 64 (1st Cir. 2001).

GE alleges that it is entitled to relief for two reasons: (A) it was denied notice and opportunity to respond to the Court's newly adopted claim constructions; and (B) the Court's clarifications of the constructions are incorrect as matter of law.  Mem. Supp. Mot. Reconsideration 2-3.  This memorandum addresses each in turn and concludes that no extraordinary circumstances warranting 60(b) reconsideration exists and, accordingly, that GE's motion is denied.

### A.   Notice and Opportunity to be Heard

GE contends that it had no notice that Siemens "was seeking -- much less that the Court was considering adopting -- modified constructions" until Siemens raised the issue at hearing, making the Court's April 4, 2022 Order a surprise.  Mem. Supp. Mot. Reconsideration 3-4.  Furthermore, GE takes issue with the characterization that "the parties suggested" that the two terms in question "required further construction."  See id. (quoting April 4, 2022 Order 2).  This Court's clarification of its

[5]

constructions is not a "surprise" meriting Rule 60(b) reversal
for the following reasons.

First, determining or clarifying claim scope is necessary
for resolving summary judgment motions and it is GE -- not
Siemens -- that moved for summary judgment on non-infringement
of the '776 Patent.  Analysis of a motion for summary judgment
on infringement requires two steps: (1) if there is any dispute
as to the scope or meaning of a claim, it is resolved via a
Markman style analysis; and (2) after the scope of the claims is
set, "it is determined whether the accused product or system is
within the scope of the claim."  Vulcan Eng'g Co. v. Fata
Aluminium, Inc., 278 F.3d 1366, 1373 (Fed. Cir. 2002); see also
Markman v. Westview Instruments, Inc., 52 F.3d 967, 977-80 (Fed.
Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).  Claim
construction, at step one, is matter of law for the Court to
determine.  Bai v. L & L Wings, Inc., 160 F.3d 1350, 1353 (Fed.
Cir. 1998).  It is not just the Court's power, but its duty to
engage in such an interpretation "[w]hen the parties raise an
actual dispute regarding the proper scope of these claims."  O2
Micro Int'l Ltd. v. Beyond Innovation Tech. Co., 521 F.3d 1351,
1360 (Fed. Cir. 2008).  In fact, "[a] motion for summary
judgment, at any stage in the proceedings, is an appropriate
vehicle [] for amending the claims construction."  Bateman v.
Por-Ta Target, Inc., No. C 01-5599 JL, 2004 U.S. Dist. LEXIS

28487, at *7 (N.D. Cal. July 28, 2004) (citing Markman, 52 F.3d at 976).  Furthermore, at the summary judgment stage, "[i]n the event that claim construction is required, it will be done without conducting a Markman hearing."  Meritor Transmission Corp. v. Eaton Corp., No. 1:04CV178, 2006 U.S. Dist. LEXIS 108037, at *3-4 (W.D.N.C. Feb. 1, 2006).

Second, as discussed below, courts are at liberty to clarify, amend, or update claim interpretation -- regardless whether a party has moved for such revision -- if the Court identifies such a need.  A Markman Order "determining claim construction . . . [is] provisional in the sense that it is interlocutory."  Vivid Techs., Inc. v. Am. Sci. & Eng'g, Inc., 997 F. Supp. 93, 95 (D. Mass. 1997) (Keeton, J.).  Accordingly, this Court "has discretion to review the claims construction at any time before final adjudication" and "may review the claims construction sua sponte."  Bateman, 2004 U.S. Dist. LEXIS 28487, at *12-13.  Indeed, "it is not necessary for the parties to file a motion for reconsideration of a claim construction order, [because] if the Court 'is convinced it did err, it will amend its claim construction.'"  Id. at *13 (quoting ASM Am., Inc. v. Genus, Inc., No. C-01-2190 EDL, 2003 U.S. Dist. LEXIS 7786, at *6 (N.D. Cal. Jan. 10, 2003)).  "District courts may [also] engage in a rolling claim construction, in which the court revisits and alters its interpretation of the claim terms as its

[7]

understanding of the technology evolves." Jack Guttman, Inc. v.
Kopykake Enters., Inc., 302 F.3d 1352, 1361 (Fed. Cir. 2002);
see also Serono Inc. v. Ferring Pharms., Inc., No. C.A. 02-
11832-MLW, 2004 WL 5645756, at *1 (D. Mass. May 26, 2004) (Wolf,
J.) (highlighting that its claim constructions were subject to
change, in part, because the Markman hearing had been conducted
prior to any motion for summary judgment: "it is particularly
appropriate to note that the court's interpretation of these
claims may evolve as the case progresses and the court is
educated further about or provided expert testimony on the
technology in question"); Open Text S.A. v. Box, Inc., No. 13-
cv-04910-JD, 2014 U.S. Dist. LEXIS 167021, at *9 (N.D. Cal. Dec.
1, 2014) ("To the extent that disputes later develop over the
scope of the claims -- or the constructions set forth in this
order -- it may become necessary for the Court to revise its
constructions, or to construe additional terms.").

Therefore, it should come as no surprise to GE that this
Court clarified claim terms, as it is wont to do. See Guttman,
302 F.3d at 1361; see also Cytologix Corp. v. Ventana Med. Sys.,
424 F.3d 1168, 1172 (Fed. Cir. 2005) (explaining that "district
court[s] ha[ve] considerable latitude in determining when to
resolve issues of claim construction"). GE moved for summary
judgment on non-infringement, which placed the onus on this
Court further to clarify any terms relevant to the motion.

Furthermore, courts are free to further construe or clarify claim terms when needed.  The necessity of further clarification here was highlighted by the motion for summary judgment **briefing**; in particular, the discrepancies between (1) GE's description of the claim terms as compared to the Court's Markman constructions; and (2) GE's interpretation of the Court's Markman constructions, as compared to Siemens's.

As to the term "a circular inner base structure," GE added requirements to the Markman constructions, claiming that this Court "rejected" the possibility that "disparate components . . . arranged circumferentially" could constitute "a circular inner base structure" in its Markman Order.  Mem. Supp. Def. GE's Mot. Summ. J. Non-Infringement '776 Patent ("GE's Mem. Non-Infringement '776 Patent") 4, ECF No. 158.  At the Markman hearing, however, this Court explicitly reserved this question for a later date -- perhaps the summary judgment stage.  Tr. Markman Hr'g 33:22-34:3 (refusing to decide whether a single continuous component was required at the Markman stage and stating "[w]hether I can be crowded into a ruling on summary judgment [on this issue] is unclear").  Furthermore, this interpretation stands in stark contrast to Siemens's reading, which asserts the term did not require a "single continuous piece."  SGRE's Opp'n GE's Mot. Summ. J. Non-Infringement '776

Patent ("Siemens's Opp'n Non-Infringement '776 Patent") 5, ECF No. 186.

As to the term "hollow chamber," GE argues that under the Court's construction a chamber cannot be considered "hollow" if it contains structural supports. GE's Mem. Non-Infringement '776 Patent 7. This Court, however, never outlined such a requirement and rather accepted the construction agreed upon by both parties -- "empty space." See Siemens, 2021 WL 5040409, at *11. This also stands in contrast to Siemens's interpretation, which outlined that an "empty space" or "hollow chamber" need not be "a completely empty space" to meet the claim construction. Siemens's Opp'n Non-Infringement '776 Patent 12.

Both GE's misinterpretation of this Court's constructions at the Markman stage, and the parties' continuing disagreement about the **meaning** of the terms during their summary judgment **briefing**, highlighted conflicts in **construction** in need of resolution. The Court's April 4, 2022 Order has not altered its original constructions; it has simply clarified them. See generally April 4, 2022 Order. While it is true that the Federal Circuit has discouraged "hypertechnical refinements of the meaning of claims following claim construction to support a **grant** of summary judgment," Apple, Inc. v. Samsung Elecs. Co., No. 12-CV-00630-LHK, 2014 U.S. Dist. LEXIS 8157, at *68-69 (N.D. Cal. Jan. 21, 2014) (emphasis added) (citing AFG Industries,

Inc. v. Cardinal IG Co., 375 F.3d 1367 (Fed. Cir. 2004)), this
Court has **denied** summary judgment, and only refined the terms to
the extent necessary.

GE argues it is entitled to notice and opportunity to
respond to these clarified claim constructions, particularly
because they were not proposed by either party.  Mem. Supp. Mot.
Reconsideration 3-5.

Contrary to GE's suggestion that **further** briefing or
hearing is required before this Court makes revisions, see Mem.
Supp. Mot. Reconsideration 4, "Markman does not require a
district court to follow any particular procedure in conducting
claim construction" or to hold a hearing, Ballard Med. Prods. v.
Allegiance Healthcare Corp., 268 F.3d 1352, 1358 (Fed. Cir.
2001).  Furthermore, the central case to which GE cites for this
proposition, Qualcomm Inc. v. Intel Corp., not only involved a
change in construction by the United States Patent Office rather
than a court, but also concerned a change in construction that
was "difficult to imagine either party [would] anticipate."  6
F.4th 1256, 1263 (Fed. Cir. 2021).  In contrast, the terms at
issue here have been disputed and briefed extensively at both
the Markman and summary judgment stages of this case.[1]  Where an

---

[1] See Siemens, 2021 WL 5040409, at *8-9, *11-12; Def. GE's
Claim Construction Br. 6-8, 10-12, ECF No. 90; SGRE's Opening
Claim Construction Br. 16-17, 19-20, ECF No. 91; SGRE's
Responsive Claim Construction Br. 4-7, 9-11, ECF No. 99; Def.

issue relevant to a term's construction has been a constant point of contention during proceedings, the parties are on notice that the court may decide the issue in its constructions or clarifications.  See Intellectual Ventures II LLC v. Ericsson Inc., 686 F. App'x 900, 906 (Fed. Cir. 2017) (holding that a party's due process rights had not been violated where there was a "continuous focus on . . . [the claim term] . . . before and during oral arguments").  This Court even mentioned at least one of these clarifications was possible at the Markman hearing.  Tr. Markman Hr'g 35:13-19; see also TQ Delta, LLC v. DISH Network LLC, 929 F.3d 1350, 1355-56 (Fed. Cir. 2019) (explaining that a party was on notice, because the Patent Board had revealed its understanding of term before its decision).

Finally, the fact that the Court's clarifications were not proposed by either party is of no consequence; a court "may adopt a definition not proposed by either party that best fits with the claim language and specification." Homeland Housewares, LLC v. Whirlpool Corp., 865 F.3d 1372, 1376 (Fed. Cir. 2017); Praxair Distr., Inc. v. Mallinckrodt Hosp. Prod. IP Ltd., 890 F.3d 1024, 1034 (Fed. Cir. 2018) (concluding the United States Patent Office could adopt a construction that

---

GE's Resp. SGRE's Opening Claim Construction Br. 15-16, 19-20, ECF No. 100; GE's Mem. Non-Infringement '776 Patent 3-12; Siemens's Opp'n Non-Infringement '776 Patent 5-13.

[12]

neither party proposed); <u>Shire LLC</u> v. <u>Amneal Pharm., LLC</u>, Civil

Action No. 11-3781 (SRC), 2013 U.S. Dist. LEXIS 111773, at *30

(D.N.J. Aug. 8, 2013) (rejecting both parties' constructions).

**B.   GE's Argument that the Clarifications are Incorrect as Matter of Law**

This Court's order clarified the definition of "a circular

inner base structure" as:

> "a circular inner base structure" need not be, but may be, constituted by one continuous piece.

<u>See</u> April 4, 2022 Order 2-3.  It also further clarified the

meaning of "hollow chamber" or "empty space" as:

> a "hollow chamber" or "empty space," is "hollow" or "empty" as long as at least some part of it is continuously empty or hollow (it need not be entirely empty or hollow).

<u>Id.</u>  GE challenges each as incorrect as a matter of law.  The

Court rejects GE's contentions.

**1.   "a circular inner base structure"**

GE claims that the Court's construction of "a circular

inner base structure" is incorrect for four reasons: (a) it is

inconsistent with the plain language of the claim and definition

of the word "structure"; (b) it goes against the intrinsic

evidence of the '776 Patent; (c) the definition introduces a

negative limitation absent any express disclaimer or

lexicography; and (d) the modified construction would render the

patent invalid.  Mem. Supp. Mot. Reconsideration 5-7.  GE's
arguments fail on all accounts.

### a.   The Plain Language & Definition

As to the first argument, GE claims that "[t]he claim term
'inner base structure,' by its use of the singular 'structure'
describes one continuous piece, rather than multiple separate
pieces ('structures,' plural)."  Id. 5.  In other words, GE
argues that because the term "structure" is used in its singular
form in the claims, an "inner base structure" must be formed of
**one continuous piece**.  This reading mistakes the plain language
of the claims.  The singular use of structure suggests that: "A
wind turbine with a generator" is comprised of "a circular inner
base structure" among other components.  '776 Patent col. 3, ll.
25-31.  The singularity refers to the number of structures one
could define as "a circular inner base structure" in the "wind
turbine" of the '776 Patent.  The use of the singular term
"structure," however, does not describe what "a circular inner
base structure" must be **comprised of**.  See id. col. 3, ll. 25-
35.

To the extent GE makes an argument regarding the dictionary
definition of "structure," the evidence also weighs against it
in that regard.  In deciphering the plain meaning of claim
terms, the Federal Circuit sometimes starts from a term's
dictionary definition.  See In re Stoller, 598 F. App'x 772, 774

[14]

(Fed. Cir. 2015).  Courts can consider extrinsic evidence, such as the dictionary definition of terms, Markman, 52 F.3d at 980, "if needed to assist in determining the meaning or scope of technical terms in the claims," Pall Corp. v. Micron Separations, Inc., 66 F.3d 1211, 1216 (Fed. Cir. 1995) (citations omitted); see also Vitronics Corp. v. Conceptronic, Inc., 90 F.3d 1576, 1584 n. 6 (Fed. Cir. 1996).

The dictionary definition of "structure" (in its singular form) is "something made up of more or less interdependent elements or parts: something having a definite or fixed pattern of organization."  Webster's Third New Int'l Dictionary 2267 (Philip Babcock Gove ed., 3d ed. 2002).  Other dictionaries are in accord defining structure as: "Something made up of a number of parts that are held or put together in a particular way"; "Something constructed, such as a building."  Structure, American Heritage Dictionary, https://ahdictionary.com/word/search.html?q=structure (last visited May 22, 2022).  The term "structure" does not then suggest that the inner base structure need be made up of one continuous piece; rather, it describes a component comprised of multiple discernable pieces.

Therefore, the Court's clarification is consistent with the plain language of the claim.

[15]

b.   **The Intrinsic Evidence**

With regard to its second argument, GE cites to the following portions of the specification in order to claim that "a circular inner base structure" must be one continuous piece: "an object of the present invention to provide a wind turbine with a generator with a **rigid stator support structure**"; "[t]he **stator support structure** of the inventive wind turbine with a generator comprises a base structure which renders the base structure particularly stable."   Mem. Supp. Mot. Reconsideration 5 (quoting '776 Patent col. 1, ll. 37-39; id. col. 1, ll. 50-52) (emphasis in added).   GE argues these sections indicate that "a discontinuous base structure is inconsistent with the invention as described."   Id. 6.

This Court agrees that "the specification is always highly relevant to the claim construction analysis."   Vitronics, 90 F.3d at 1582.   Claim terms are indubitably intended to be read according to "the meaning and scope with which they are used in the specification."   Kinik Co. v. ITC, 362 F.3d 1359, 1365 (Fed. Cir. 2004).   The specification at issue here, however, if anything, counsels against GE's conclusion.

GE cited to one of the same portions of the specification at the Markman stage in arguing that "a circular inner base structure" must be "rigid."   See Siemens, 2021 WL 5040409, at *8 (quoting '776 Patent col. 1, ll. 36-38) (addressing GE's

argument as to "rigid stator support structure").  As this Court identified then, and reiterates now, "[t]here is no intrinsic or extrinsic basis to conclude that" the terms "circular inner base structure" and "stator support structure" are used "synonymous[ly]" in the specification.  Id.  Furthermore, "[t]o the extent that GE suggests that the circular inner base structure is rigid" or particularly stable "because it is a component of the stator support structure, the record is at best ambiguous on that point, and '[a]mbiguous language cannot support'" such a requirement.  Id. (quoting Poly-Am., L.P. v. API Indus., Inc., 839 F.3d 1131, 1136 (Fed. Cir. 2016)).

Even were this Court to assume arguendo that the terms "rigid" or "particularly stable" could be attributed to "a circular inner base structure," neither adjective is synonymous with, or even implies, the existence of one continuous ring. Being composed of multiple pieces and being stable or rigid are not mutually exclusive concepts.  Furthermore, GE fails to point to **any** evidence in the specification to indicate that these terms are synonymous or indicative of one another.

GE also claims the inner base structure is presented as a single continuous piece in the embodiments, which entails it must be continuous.  Mem. Supp. Mot. Reconsideration 6.  GE cites to a portion of the specification, see Mem. Supp. Mot. Reconsideration 5 (quoting '776 Patent col. 2, ll. 49-50), which

[17]

describes one of the '776 Patent's embodiments as a "[s]tator [which] comprises a base structure [] which is formed as a circular ring," '776 Patent col. 2, ll. 49-50.  Not only has this Court already rejected this position at the Markman stage, Siemens, 2021 WL 5040409, at *10 (concluding that "formed as a circular ring" does "not necessarily refer to the 'inner base structure'" (quoting '776 Patent col. 2, l. 50)), but GE also misstates the standard as to embodiments.  The Federal Circuit has instructed that while courts "should not normally interpret a claim term to exclude a preferred embodiment," Primos, Inc. v. Hunter's Specialties, Inc., 451 F.3d 841, 848 (Fed. Cir. 2006), embodiments should not be read to limit the scope of claim terms, see SuperGuide Corp. v. DirecTV Enters., Inc., 358 F.3d 870, 875 (Fed. Cir. 2004).  In fact, the Federal Circuit has held that trying to "import a preferred embodiment into the claims" is "flawed."  Acumed LLC v. Stryker Corp., 483 F.3d 800, 805 (Fed. Cir. 2007).  Reading "a circular inner base structure" to be one continuous piece based on the embodiment would improperly import an embodiment into a claim limitation.

Finally, the Federal Circuit has suggested that claims are to be given "their broadest reasonable construction in light of the specification."  Phillips v. AWH Corp., 415 F.3d 1303, 1316 (Fed. Cir. 2005) (internal quotation marks omitted).  Importing the claim limitation of "continuous" onto "a circular inner base

[18]

structure" would improperly narrow the term in a way that is unsupported by any evidence.

### c.   Importing a Negative Claim Limitation

Next, GE argues "[t]he Court's modified construction is incorrect because it introduces a negative limitation into the claim absent any express disclaimer or lexicography within the '776 [P]atent specification."[2]  Mem. Supp. Mot. Reconsideration 6.  GE suggests that the Court's construction outlines what the '776 Patent's "structure is not," not what it is.  Id.  GE is correct that a negative claim limitation speaks to what an invention **is not** or what it excludes.  Novartis Pharm. Corp. v. Accord Healthcare, Inc., No. 2021-1070, 2022 U.S. App. LEXIS 58, at *18 (Fed. Cir. Jan. 3, 2022).  Where it fails is in its reading of this Court's clarifications -- which do not describe what the '776 Patent excludes, but rather what it may include.

The Court stated in its clarifying order that "'a circular inner base structure' **need not be**, but **may be**" continuous. April 4, 2022 Order (emphasis added).  A negative construction would have been that the circular inner base structure "is not

---

[2] Siemens argues that GE has waived this argument, because it has consistently asserted that a "circular inner base structure" needed to be one continuous piece, yet it never stated that answering its question could introduce an improper negative limitation in the claim.  Mem. Opp'n Mot. Reconsideration 5.  The Court need not reach this question as it resolves GE's motion for reconsideration on other grounds.

continuous" or "is not constituted by separate components arranged circumferentially."  The cases cited by GE indicate that negative claim constructions describe what an invention "cannot be," "must not be," or "excludes"; significantly, negative constructions do not describe what an invention "need not be," "is not required to be," or "may be."  See Mem. Supp. Mot. Reconsideration 6 (citing Omega Eng'g, Inc., v. Raytek Corp., 334 F.3d 1314, 1322 (Fed. Cir. 2003) (identifying a construction that stated the invention could "not strike the center or interior portion of the energy zone" as a negative claim limitation); Eko Brands, LLC v. Adrian Rivera Maynez Enters., Inc., 946 F.3d 1367, 1380–81 (Fed. Cir. 2020) (Reyna, J., concurring) ("The district court also erred by interpreting 'passageway' **to exclude** a receptacle 'that utilized a broad, thin mesh.'" (emphasis added) (citations omitted)); Medicines Co. v. Mylan, Inc., 853 F.3d 1296, 1308 (Fed. Cir. 2017) ("On appeal, Medicines repeatedly criticizes the court's negative construction as failing to define what 'efficient mixing' **is**, as opposed to **what it is not**." (emphasis added)); Lenovo Holding Co., Inc. v. DoDots Licensing Sols. LLC, No. 2021-1247, 2021 WL 5822248, at *2 (Fed. Cir. Dec. 8, 2021) (considering whether the Board's claim construction erred by stating what an invention **excluded**).

Having ascertained that its clarification does not constitute a negative claim construction, this Court need not assess whether the appropriate conditions exist for a negative claim construction of "a circular inner base structure" in the '776 Patent.

### d.   Invalidity

"Finally," GE argues, "if the Court's modified construction were correct, all claims of the '776 [P]atent would be invalid under the written description requirement of 35 U.S.C. § 112(a)."  Mem. Supp. Mot. Reconsideration 6.[3]  "Patents are presumed to be valid and overcoming this presumption requires clear and convincing evidence."  Centocor Ortho Biotech, Inc. v. Abbott Lab'ys, 636 F.3d 1341, 1347 (Fed. Cir. 2011).  "Written description is a statutory requirement set forth in 35 U.S.C. § 112.  The written description requirement requires the inventor to disclose the claimed invention so as to allow persons of ordinary skill in the art to recognize that the inventor invented what is claimed."  Billups-Rothenberg, Inc. v. Associated Reg'l & Univ. Pathologists, Inc., 642 F.3d 1031, 1036 (Fed. Cir. 2011) (internal quotation marks omitted).  "The test . . . is whether the disclosure of the application as originally

---

[3] Siemens also argues that GE waived this invalidity argument.  Mem. Opp'n Mot. Reconsideration 7.  The Court need not assess this, however, as it resolves this issue on other grounds.

filed reasonably conveys to the artisan that the inventor had
possession at that time of the later claimed subject matter,
rather than the presence or absence of literal support in the
specification for the claim language." In re Kaslow, 707 F.2d
1366, 1375 (Fed. Cir. 1983).  "To satisfy the written
description requirement," however, "the descriptions contained
in both applications need not be identical." Pfizer Inc. v.
Perrigo Co., 933 F. Supp. 377, 381 (S.D.N.Y. 1996).

It simply "requires that the written description actually
or inherently disclose the claim element." PowerOasis, Inc. v.
T-Mobile USA, Inc., 522 F.3d 1299, 1306 (Fed. Cir. 2008).  For
example, the Federal Circuit in Tronzo v. Biomet, Inc., held
that a claim was invalid, based on failure to disclose all of
the possible shapes of the invention literally or inherently.
156 F.3d 1154, 1159 (Fed. Cir. 1998).  "The sufficiency of a
patent's written description is ordinarily a question of fact,
but '[a] patent also can be held invalid [as matter of law] for
failure to meet the written-description requirement based solely
on the face of the patent specification.'" Abbott GmbH & Co.,
KG v. Centocor Ortho Biotech, Inc., 870 F. Supp. 2d 206, 232 (D.
Mass. 2012) (Saylor, J.) (quoting Centocor, 636 F.3d at 1347).

Nothing in the specification, embodiments, or claim
limitations indicates that there are violations of the written
description requirement.  Furthermore, that a "'circular inner

base structure,' need not be, but may be, constituted by one continuous piece," April 4, 2022 Order 3, is "actually or inherently disclose[d]," PowerOasis, 522 F.3d at 1306, throughout the specification, which mentions "a circular inner base structure" but nowhere requires continuity, see generally '776 Patent.  Therefore, the Court's ruling does not render the patent invalid as matter of law solely based on the face of the specification.  Furthermore, GE has not adduced **any** evidence of invalidity and only makes conclusory legal argument.

2. **"hollow chamber"**

GE also alleges that the Court's construction of "hollow chamber" is inconsistent with the plain language of the claim and the specification of the '776 Patent.  Mem. Supp. Mot. Reconsideration 7.  Specifically, GE claims that "[t]he 'hollow chamber' of the '776 [P]atent is specifically identified by the claim language as being formed **between** four specific claimed structures: the 'circular inner base structure,' the 'circular outer base structure,' and the 'plurality of connection structures.'"  Id. (quoting '776 patent col. 3, l. 35; id. col. 4, l. 3).  Essentially, GE argues that because the section between these two structures is delineated as hollow or empty that chamber or space must be completely hollow or empty.  This is an overly narrow reading of what the parties already agreed

[23]

to at the <u>Markman</u> stage -- "empty space."  <u>See</u> <u>Siemens</u>, 2021 WL
5040409, at *11.

GE misinterprets both the claim language and the Court's
construction.  In its April 4, 2022 Order, this Court simply
clarified what can be characterized as "hollow" or "empty" -- a
component of which at least some "part" is "continuously empty
or hollow."  <u>See</u> April 4, 2022 Order 3.  This construction does
not alter or add any additional requirements.  Rather, GE would
have had the Court add a requirement that the **entire** space be
"completely empty" in order to be considered hollow or empty.

## IV.  MOTION FOR CLARIFICATION

One of GE's motions for summary judgment, was based on the
claim that no infringing activity has taken place within the
United States.  <u>See</u> Mot. Summ. J. Non-infringement within U.S.
The Court denied this motion.  <u>See</u> April 4, 2022 Order 2.
Subsequently, GE moved for clarification of the ruling, asking
whether the Court denied the motion for summary judgment: (1)
because there was dispute of material fact as to "whether an
infringing act ha[d] taken place within [twelve] nautical miles
of the coastline of the United States"; or (2) "because the
Court ha[d] concluded as [] matter of law that the reach of the
Patent Act extend[ed] beyond [twelve] nautical miles."  Mot.
Clarification 2.  GE asserts that "[t]he basis for the Court's
decision will affect how GE prepares its case for trial [and] .

. . whether the parties will need to propose jury instructions on the issue of territoriality." Id. Siemens opposes the motion for clarification arguing that "[a]t this stage it does not matter why" the Court denied GE's motion for summary judgment, because there is a genuine dispute of material fact regarding whether the turbines will be located within twelve nautical miles and that "at trial, [Siemens] intends to adduce evidence demonstrating that the turbines may be installed within the territorial sea." Siemens's Opp'n Mot. Clarification 1.

In the interest of providing clarity and facilitating refinement of each party's arguments for trial, this Court grants the Motion for Clarification. While a genuine dispute of material fact exists as to whether the wind turbines will be located within twelve nautical miles of the United States coastline, this Court holds that an act can be considered "within the United States" for purposes of patent infringement, see 35 U.S.C. § 271(a), if it involves the sale or offer to sell something that will be "permanently or temporarily attached to the seabed . . . for the purposes of exploring for, developing, or producing energy resources, including non-mineral energy resources" within 200 miles of the Unites States coast. 43 U.S.C. § 1333(a)(1)(iii).

Section 271(a) of Title 35 of the United States Code provides that "whoever without any authority **makes, uses, offers**

[25]

**to sell, or sells** any patented invention, **within the United States** . . . during the term of the patent therefor, infringes the patent."  35 U.S.C. § 271(a) (emphasis added); <u>Microsoft Corp.</u> v. <u>AT&T Corp.</u>, 550 U.S. 437, 441 (2007) ("It is the general rule under United States patent law that no infringement occurs when a patented product is made and sold in another country.").  In denying the GE's motion for summary judgment this Court considered three main issues: (A) what constitutes a sale or offer to sell; (B) what can be considered "within the United States" for purposes of the statute; and (C) finally, what disputes of material fact exist, regardless of this definition.

**A.   Sales and Offers to Sell**

"[A] contract between two [United States] companies for the sale of the patented invention with delivery and performance in the [United States] constitutes **a sale** under § 271(a) as . . . matter of law."  <u>Transocean Offshore Deepwater Drilling, Inc.</u> v. <u>Maersk Contractors USA, Inc.</u>, 617 F.3d 1296, 1310 (Fed. Cir. 2010) (emphasis added).  More specifically,

> [T]he "selling" of an infringing article has both a physical and a conceptual dimension to it. That is to say, it is possible to define the situs of the tort of infringement-by-sale either in real terms as including the location of the seller and the buyer and perhaps the points along the shipment route in between, or in formal terms as the single point at which some legally operative act took place, **such as the place where the**

[26]

> **sales transaction would be deemed to have occurred as a matter of commercial law**.

North Am. Philips Corp. v. Am. Vending Sales, Inc., 35 F.3d 1576, 1579 (Fed. Cir. 1994) (emphasis added).  Generally, the Federal Circuit has considered the location of the transaction of sale to be the place where **performance** takes place rather than the place where legal title passes.  See id.; see also Litecubes, LLC v. N. Light Prod., Inc., 523 F.3d 1353, 1369 (Fed. Cir. 2008) (holding products shipped f.o.b., where legal title transferred in Canada, were still sold "within the United States" because that is where buyers were located).

"An **offer to sell** is a distinct act of infringement separate from an actual sale.  An offer to sell differs from a sale in that an offer to sell need not be accepted to constitute an act of infringement."  Transocean, 617 F.3d at 1308 (emphasis added).  Determining whether an offer to sell within the United States has taken place requires looking to "**the location of the future sale**" not the location of the offer.  Id. at 1309 (emphasis added).  For example, even if two United States-based companies negotiate abroad for a contract that is to be performed within the United States, the offer of sale can still be considered to exist within the United States.  Id. at 1310.  The converse is also true: if the negotiation of the sale takes place in the United States but the sale happens outside of it,

no offer of sale has taken place within the United States.  Halo
Elecs., Inc. v. Pulse Elecs., Inc., 831 F.3d 1369, 1380 (Fed.
Cir. 2016) ("Pulse did not directly infringe the Halo patents
under the 'offer to sell' provision by offering to sell in the
United States the products at issue, because the locations of
the contemplated sales were outside the United States.").

Siemens's asserts GE's Haliade-X series offshore wind
turbines infringe several claims of the '776 and '413 Patents.
GE's Statement Undisputed Fact Supp. Mot. Summ. J. Non-
Infringement '413 & '776 Lack U.S. Infringing Act ("GE's Facts
U.S. Act") ¶¶ 2-3, ECF No. 150; Pl.'s Resp. Def. GE's Statement
Undisputed Fact Supp. Mot. Summ. J. Non-Infringement '413 & '776
Lack U.S. Infringing Act & Pl.'s Suppl. Facts ("Siemens's Facts
U.S. Act") ¶¶ 2-3, ECF No. 195.  GE has been awarded contracts
to provide Haliade-X turbines off the coast of the United States
(the projects are called Vineyard Wind and Ocean Wind I), but
they have yet to perform the contracts.  GE's Facts U.S. Act ¶
8; Siemens's Facts U.S. Act ¶ 8.  Siemens alleges, and GE does
not rebut, that even if the projects are located outside the
United States territorial sea -- which spans twelve nautical
miles from the coastline -- the Haliade-X wind turbines will be
attached to the seabed within 200 nautical miles off the United
States coast.  Siemens's Facts U.S. Act ¶ 9.

Given this information, depending on what is considered "within the United States," both a sale and an offer to sell could have taken place within the United States under the meaning of the statute.

GE appears to argue that because installations of the wind turbines have yet to occur, sales have not taken place. Reply Mem. Supp. Def.'s Mot. Summ. J. Non-Infringement Lack U.S. Infringing Act 3-4, ECF No. 209. This argument is meritless. All that is needed is a contract for sale with performance in the United States, see Transocean, 617 F.3d at 1310, which exists here, see GE's Facts U.S. Act ¶ 8; Siemens's Facts U.S. Act ¶ 8. Furthermore, even if the sales had not materialized into contracts -- which they have -- offers for sale would have existed regardless, given the negotiations that took place, constituting a second basis for an infringing act.[4]

_____

[4] Siemens makes some vague and partially redacted references to negotiations taking place in the United States. See generally Siemens's Facts U.S. Act. Even taking for granted that such negotiations took place, they are not relevant to whether an offer for sale occurred in the United States. Transocean, 617 F.3d 1309.

Siemens also argues that GE "generated interest for sale in the [United States]." Pl.'s Resp. Def. GE.'s Mot. Summ. J. Non-Infringement Lack U.S. Infringing Act 14, ECF No. 191. "[T]he meaning of 'offer to sell' is to be interpreted according to its ordinary meaning in contract law, as revealed by traditional sources of authority." Rotec Indus., Inc. v. Mitsubishi Corp., 215 F.3d 1246, 1255 (Fed. Cir. 2000). Generating interest in the United States market therefore could

**B.    Within the United States**

Section 100(c) of Title 35 of the United States Code defines the term "United States" to include the "United States of America, its territories and possessions."  35 U.S.C. § 100(c).  "[A] patent is a sovereign grant and has no force beyond the territorial limits of sovereignty." Hanover Star Milling Co. v. Allen & Wheeler Co., 208 Fed. 513, 521 (7th Cir. 1913); see also Dowagiac Mfg. Co. v. Minn. Moline Plow Co., 235 U.S. 641, 650 (1915) ("The right conferred by a patent under our law is confined to the United States and its territories." (citation omitted)); Voda v. Cordis Corp., 476 F.3d 887, 901 (Fed. Cir. 2007) ("A patent right is limited by the metes and bounds of the jurisdictional territory that granted the right to exclude.").

Few cases have assessed what is territorially within the United States for purposes of patent law, and those that have deal primarily with the applicability of patent law to various types of vessels.  See, e.g., Brown v. Duchesne, 60 U.S. 183, 198 (1856) (holding that a foreign vessel legally in a United

---

be sufficient to constitute an offer of sale.  See id.  The summary judgment record is underdeveloped on this point. Nevertheless, the Court need not resolve this question, because a basis for an offer to sell already exists elsewhere -- in GE's undisputed contract negotiations to install the Haliade-X off the United States coastline.

States port was not subject to patent laws); <u>Gardiner</u> v. <u>Howe</u>, 9 F. Cas. 1157, 1158 (C.C.D. Mass. 1865) ("The patent laws of the United States afford no protection to inventions beyond or outside of the jurisdiction of the United States; but this jurisdiction extends to the decks of American vessels on the high seas, as much as it does to all the territory of the country, and for many purposes is even more exclusive."); <u>M-I Drilling Fluids UK Ltd.</u> v. <u>Dynamic Air Inc.</u>, 99 F. Supp. 3d 969, 978 (D. Minn. 2015) (holding that patent law applied to drilling technology on United States-flagged ships on the high seas).

The United States exercises different sovereign rights and territorial jurisdiction at different distances from its coastline.  "[T]he United States possesses complete sovereignty over the territorial sea -- a belt of sea that extends no more than **[twelve] miles seaward of the baseline.**"  <u>WesternGeco L.L.C.</u> v. <u>Ion Geophysical Corp.</u>, 776 F. Supp. 2d 342, 365–67 (S.D. Tex. 2011) (emphasis added).  "[T]he United States possesses sovereign rights over the natural resources located in the [C]ontinental [S]helf -- the seabed and subsoil of the submarine areas that extend beyond its territorial seas."  <u>Id.</u> The Outer Continental Shelf "is defined as including all submerged land that is beyond the outer limits of state jurisdiction (ordinarily three nautical miles from shore) and within the limits of national jurisdiction (ordinarily 200 miles

from shore).” <u>Amber Res. Co.</u> v. <u>United States</u>, 538 F.3d 1358,
1362 (Fed. Cir. 2008) (citing 43 U.S.C. §§ 1331(a), 1332, 1301).
This begs the question of whether patent law extends to the
Outer Continental Shelf.

The Outer Continental Shelf, is governed by the Outer
Continental Shelf Lands Act (the “OCSLA”) which mandates that:

> In general.  -- The Constitution and laws and civil
> and political jurisdiction of the United States are
> extended, to the same extent as if the outer
> Continental Shelf were an area of exclusive Federal
> jurisdiction located within a State, to -- (i) the
> subsoil and seabed of the outer Continental Shelf;
> (ii) all artificial islands on the outer Continental
> Shelf; (iii) installations and other devices
> permanently or temporarily attached to the seabed,
> which may be erected thereon for the purpose of
> exploring for, developing, or producing resources,
> including non-mineral energy resources; or (iv) any
> such installation or other device (other than a ship
> or vessel) for the purpose of transporting or
> transmitting such resources.

43 U.S.C. § 1333(a)(1)(A).  Several sources of evidence --
including the plain language and legislative history of the
OCSLA, the ambit of federal jurisdiction, and the sparse caselaw
that exists on this topic -- indicate that the OCSLA affects the
scope of what can be considered “within the United States,” for
patent law purposes under 35 U.S.C. § 271(a).

### 1.   **Plain Language & Legislative History**

“It is a well-established principle of statutory
construction that absent clear evidence of a contrary
legislative intention, a statute should be interpreted according

to its plain language." United States v. Apfelbaum, 445 U.S. 115, 121 (1980).  The language of the statute indicates that the "laws . . . of the United States" apply to items affixed to the Outer Continental Shelf for energy generation.  43 U.S.C. § 1333(a)(1)(A).  Given that the laws of the United States encompass federal patent laws, there is no reason why patent law would not apply to the items covered by the OCSLA.

Furthermore, the legislative history of the act supports this reading.  The act was passed in 1978, "responding to increasingly serious domestic energy problems." False Pass v. Watt, 565 F. Supp. 1123, 1131 (D. Alaska 1983).  The OCSLA is the successor to the Submerged Lands Act, which created United States jurisdiction and control over the seabed and subsoil of the Outer Continental Shelf.  H.R. Rep. No. 83-413, at 1-2 (1953).  Through the OCSLA, Congress sought to extend federal power over the area to promote "leasing," "discovery[,] and development." Id. at 2,3.

> The discovery of extremely valuable deposits of oil and gas and probably sulfur in the seabed of the Continental Shelf off the shores of the United States, as well as its vast potential as a source for other raw materials, gave rise to the necessity for protection and control of the area and administration of the development of its economic wealth, so essential to our economy in peace or war.

S. Rep. No. 83-411, at 7 (1953).  In short, "[t]here can be no question that the primary purpose for this legislation was to

assert United States jurisdiction over the shelf, and to set up a system for the full development of its natural resources." Olsen v. Shell Oil Co., 561 F.2d 1178, 1188 (5th Cir. 1977). Its key purpose "was to expedite the exploration and development of the [O]uter [C]ontinental [S]helf while retaining adequate assurances that the marine and coastal environments would be protected."  Watt, 565 F. Supp. at 1131.

"Clearly [] patent law was" somewhat similarly "enacted to benefit society by encouraging discoveries and inventions." Dennis v. Pitner, 106 F.2d 142, 144 (7th Cir. 1939).  The OCSLA's legislative intent to encourage discovery and invention in the scope of coastal resource exploration is necessarily compatible with patent law's legislative intent.  Patent law's protections are useful to encourage the desired discovery and invention in the areas and devices governed by the OCSLA.

This is not to say that this legislative intent indicates an unbounded desire by Congress to extend the reach of patent law.  "Congress has not," for example, "enacted legislation that extends [United States] patent law to cover infringement occurring in the EEZ [United States Exclusive Economic Zone]." WesternGeco, 776 F. Supp. 2d at 369.  Nevertheless, through the OCSLA, Congress exhibited the intent to extend federal law, which necessarily includes patent law, at the very least to devices or installations for energy generation attached to the

[34]

seabed within 200 miles of the coast.  See 43 U.S.C. §
1333(a)(1)(A).

    2.    **The Ambit of Federal Jurisdiction Under the OCSLA**

     "[T]he federal government has jurisdiction and control
over the [O]uter [C]ontinental [S]helf." Amber Res. Co., 538
F.3d at 1362; People of Vill. of Gambell v. Hodel, 869 F.2d
1273, 1277 (9th Cir. 1989) ("[T]he United States has extended
its dominion 200 miles beyond the three-mile marginal sea.");
Mote v. Oryx Energy Co., 642 F. Supp. 639, 642 (E.D. Tex. 1995)
("Artificial islands may be considered within the boundaries of
the adjacent state for purposes of determining where an accident
'occurred' for long-arm jurisdiction purposes.").  Several
courts have applied this maxim and confirmed that the reach of
this jurisdiction applies to patent infringement cases.  See
Elbit Sys. Land v. Hughes Network Sys., LLC, No. 2:15-CV-37-RWS-
RSP, 2016 WL 3675590, at *2 (E.D. Tex. Mar. 30, 2016) (holding
venue was proper in the Eastern District of Texas "[b]ecause the
acts of alleged infringement occurred on platforms permanently
or temporarily attached to the seabed, which may be erected
thereon for the purpose of exploring for, developing, or
producing resources therefrom and because at least four of those
platforms are within 200 miles of Port Arthur, Texas" (internal
quotations omitted)); Weatherford Tech. Holdings, LLC v. Tesco
Corp., No. 2:17-CV-00456-JRG, 2018 U.S. Dist. LEXIS 183553, at

*14 (E.D. Tex. Oct. 26, 2018) (holding the same in a nearly factually identical case).  In fact, "OCSLA was intended to apply to the full range of disputes that might occur on the [Outer Continental Shelf] . . . . OCSLA not only defines the law applicable to the [Outer Continental Shelf], but also grants federal courts jurisdiction over disputes occurring there." Tennessee Gas Pipeline v. Hous. Cas. Ins. Co., 87 F.3d 150, 154 (5th Cir. 1996).

### 3. **Caselaw on this Issue**

Very few cases have considered the key question in this case: whether United States patent law applies to certain inventions attached to the Outer Continental Shelf.  The few that have "make clear that the OCSLA, when its requirements are satisfied, encompasses patent law claims."  Elbit Sys. Land & C4I Ltd., 2016 WL 3675590, at *3.

The Southern District of Texas in WesternGeco L.L.C. v. Ion Geophysical Corp. held that "[United States] substantive law, including patent law" did not extend to "exploration activities" of vessels traversing the seas above the Outer Continental Shelf; it also suggested in dicta, however, that it could extend to "devices permanently or temporarily attached to the seabed." 776 F. Supp. 2d at 371.

More explicitly, the Eastern District of Texas has held that, under the OCSLA, patent law applied to rigs operating on

the Outer Continental Shelf in the Gulf of Mexico.  L.C. Eldridge Sales Co. v. Azen Mfg. Pte., Case No. 6:11-cv-599, 2013 U.S. Dist. LEXIS 186151 at *4 (E.D. Tex. Nov. 13, 2013) ("The Patent Act is a law of the United States extended through the OCSLA."); L.C. Eldridge Sales Co. v. Jurong Shipyards, Pte., Ltd., No. 6:11CV599, 2014 WL 12597719, at *2-3 (E.D. Tex. Sept. 23, 2014) (refusing to grant "judgment as a matter of law or a new trial on the issue of whether infringing activities took place in or were directed to the [United States]" where it was undisputed that the rigs operated on the Outer Continental Shelf and where the only issue of dispute was whether the rigs were "connected to the [O]uter Continental Shelf"), aff'd in part, 610 F. App'x 1015 (Fed. Cir. 2015).  Furthermore, at least one court has explicitly rejected the argument made by GE in this case, see Mem. Supp. Def. GE's Mot. Summ J. Non-Infringement U.S. Act. ("GE's Mem. Non-Infringement U.S. Act") 2, ECF No. 149, that WesternGeco supports the notion that waters more than twelve nautical miles off the coast are not within the United States for patent law purposes, see Elbit Sys., 2016 WL 3675590, at *3 ("[D]efendants misunderstand WesternGeco, which held that the OCSLA was inapplicable specifically because the accused infringing activities in that case involved a marine vessel traversing the seas and conducting seismic surveys, not devices permanently or temporarily attached to the seabed, or to devices

[37]

or vessels meant to transport resources obtained from the seabed." (internal quotation marks omitted)).

Therefore, GE's motion for summary judgment based on the absence of a United States infringing act fails as a matter of law, because it is undisputed that the Haliade-X wind turbines for energy generation will be affixed to the seabed within 200 miles from the United States coastline, and a wind turbine affixed within 200 nautical miles of the coast is "within the United States" under patent law, 35 U.S.C. 271(a).

### C. Disputes of Material Fact

This Court could have arrived at the same conclusion, notwithstanding its holding, in light of the genuine disputes of material fact that existed at the summary judgment stage as to whether the Haliade-X turbines will be installed within twelve miles of the United States coast.  Even were this Court to take GE's allegation that the wind turbines will be more than fifteen miles off the coast of New Jersey and more than twelve miles of the coast of Nantucket and Martha's Vineyard as true, GE's Mem. Non-Infringement U.S. Act 4, as Siemens argues, an item being more than twelve miles off the nautical coast from one geographic point does not necessarily guarantee that it is located more than twelve miles from any United States coast, see Pl.'s Resp. Def. GE's Mot. Summ J. Non-Infringement Lack of U.S. Act. 7-9, ECF No. 191.

Siemens disputes, and GE fails to provide any affirmative evidence to rebut, that the wind turbines will be more than twelve miles away from every point of the nearest United States coastline.

## V.    CONCLUSION

This Court therefore **DENIES** GE's Motion for Reconsideration.  The Court's April 4, 2022 Order clarifying its Markman interpretations was not an unfair surprise and the clarifications were proper.

This Court **ALLOWS** GE's Motion for Clarification and holds that patent law applies to "**installations and other devices permanently or temporarily attached to the seabed**, which may be erected thereon for the purpose of exploring for, developing, or producing resources, including non-mineral energy resources," within 200 miles of the coastline.  See 43 U.S.C. § 1333(a)(1)(A) (emphasis supplied).  Accordingly, this Court denied GE's motion for summary judgment for lack of a United States infringing act because among other reasons, the Haliade-X turbines will undisputedly be installed at least within 200 miles of the United States coast.  See Def. GE's Mot. Summ. J. Non-Infringement Lack U.S. Act; April 4, 2022 Order 2.

**SO ORDERED.**

/s/ William G. Young

WILLIAM G. YOUNG

JUDGE

of the

UNITED STATES[5]

---

[5] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 44 years.