```
              UNITED STATES DISTRICT COURT
               DISTRICT OF MASSACHUSETTS
_____
                                  )
SIEMENS GAMESA                    )
RENEWABLE ENERGY A/S,             )
                                  )
          Plaintiff,              )
                                  )
     v.                           )   CIVIL ACTION
                                  )   NO. 21-10216-WGY
GENERAL ELECTRIC CO.,             )
                                  )
          Defendant.              )
_____)
```

YOUNG, D.J.                                        February 2, 2023

**MEMORANDUM AND ORDER**

The issue before this Court requires it to scrutinize one small area of a particular battlefield between Siemens Gamesa Renewable Energy A/S ("SGRE") and General Electric Co. ("GE") who are locked in a global struggle for dominance in the lucrative and vitally important market to develop offshore wind turbines. This struggle does nothing to advance the public interest of the people of the United States or any other nation. Indeed, it inhibits efforts to combat climate change world-wide. It would be far, far better for these two corporate behemoths -- consistent with antitrust requirements -- to cross license their particular technological contributions and forge ahead with production in the global public interest.

In these premises, however, corporate self-interest appears to hold full sway, and this Court must do its duty.

[1]

This particular matter arises pursuant to this Court's September 7, 2022, Final Judgement Including Permanent Injunction ("Sept. 7, 2022 Order"), ECF No. 466, Carve Out B prong. In response to this Court's most recent order regarding damages, see Sept. 7, 2022 Order, both parties submitted briefs regarding the Carve Out B Royalty, a portion of the Court's order frankly intended to be nothing more than a placeholder. See Def. General Electric Company's ("GE") Brief Regarding Carveout B Royalty ("GE Brief"), ECF No. 469; Pl.'s SGRE's Mem. Regarding the Royalty for the Ocean Wind 1 Project ("SGRE's Brief"), ECF No. 477; Response by General Electric Co, ("GE's Reply"), ECF No. 485. This Court held a hearing on October 18, 2022, and took the matter under advisement. See Electronic Clerk's Notes, ECF No. 488.

SGRE urges this Court to treble the jury awarded rate of $30,000 per M/W. See SGRE's Brief, ECF No. 477. GE argues that the running reasonable royalty rate of $30,000 per M/W applies to both the Vineyard Wind 1 Project and the Ocean Wind 1 Project. GE's Reply, 1, ECF No. 485.

The Court is now tasked with providing:

> [A] concise but clear explanation of its reasons for the fee award. When an adjustment is requested on the basis of either the exceptional or limited nature of the relief obtained by the plaintiff, the district court should make clear that it has considered the

[2]

> relationship between the amount of the fee awarded and the results obtained.

Hensley v. Eckerhart, 461 U.S. 424, 437 (1983).

"It is well-settled that enhancement of damages must be premised on willful infringement or bad faith". Yarway Corp. v. Eur-Control USA, Inc., 775 F.2d 268, 277 (Fed. Cir. 1985) citing Baumstimler v. Rankin, 677 F.2d 1061, 1073 (5th Cir. 1982); Lam, Inc. v. Johns-Manville Corp., 668 F.2d 462, 474-75 (10th Cir. 1982), cert. denied, 456 U.S. 1007 (1982). The enhancement of damages rule laid out by Yarway is inapplicable in this matter, however, because Carve Out B is a court ordered stay of an otherwise sweeping injunction stemming from the jury verdict. Final J. Including Permanent Inj., ECF No. 466. The Court will not entertain willfulness arguments because "willfulness, as such, is not the inquiry when the infringement is permitted by a court-ordered stay." Amado v. Microsoft Corp., 517 F.3d 1353, 1362 (Fed. Cir. 2008).

The Court's concise and clear assessment of damages for infringement taking place <u>after</u> the injunction:

> "should take into account the change in the parties' bargaining positions, and the resulting change in economic circumstances, resulting from the determination of liability — for example, the infringer's likelihood of success on appeal, the infringer's ability to immediately comply with the injunction, the parties' reasonable expectations if

[3]

the stay was entered by consent or stipulation, etc.—
as well as the evidence and arguments found material
to the granting of the injunction and the stay.".

Id.; accord ActiveVideo Networks, Inc. v. Verizon Commc'ns, Inc., 694 F.3d 1312, 1342 (Fed. Cir. 2012), Paice LLC v. Toyota Motor Corp., 504 F.3d 1293, 1315 (Fed. Cir. 2007).

## I. CHANGES IN THE PARTIES' BARGAINING POSITIONS

### A. SGRE's Bargaining Position

SGRE asserts that it is in a more favorable bargaining position because of the jury's "determination of no invalidity and of infringement of the '413 patent." SGRE's Brief 12. SGRE argues that the Jury Verdict gives them the upper hand at the bargaining table because "[w]hen patent claims are held to be not invalid and infringed, this amounts to a "substantial shift in the bargaining position of the parties." Id; XY, LLC v. Trans Ova Genetics, 890 F.3d 1282, 1297 (Fed. Cir. 2018) citing ActiveVideo Networks, Inc. 694 F.3d 1312 at 1342.

SGRE goes on to refute GE's point that it could more economically design around the infringed patent by quoting direct language from GE's Orstead employee declaration: "'the imposition of a permanent injunction precluding Ocean Wind's use of the Haliade-X would result in significant,

[4]

and potentially irrecoverable, delays to the Ocean Wind Project entering commercial operation.'" Id. at 11 citing Dkt. 451 ("GE's Brief Regarding Form of Judgment and Injunction") at 6 (quoting Dkt. 444-2 ("Hardy Decl. to Ocean Wind amicus brief") ¶ 25) (emphasis in original).

In conclusion, SGRE argues that the finding of liability, coupled with the Court's carveout A granting GE a license to infringe, leaves GE in a more viable position economically than would have otherwise been the case, thus justifying the trebled damages award. See SGRE's Brief.

### B. GE's Bargaining Position

GE refutes SGRE's assertion that its bargaining power is enhanced by the Jury Verdict in its favor. GE's Reply 7. In support of this notion, GE points to the current circumstances of the parties, specifically, the fact that GE can "modify the design of the Haliade-X to avoid its alleged infringement at a cost far below the jury's royalty rate, let alone SGRE's trebled rate, making $90k/MW completely unattractive and far from any kind of "exemplary" royalty rate." Id. citing GE Injunction Opp. at 17 (identifying design-around costs ranging from $2,893-$9,257/MW for a 14MW turbine); see also ECF No. 479 (GE Application to Modify Injunction).

[5]

**C. Weighing of Factors**

The Court agrees that SGRE is undoubtedly in a better bargaining position following the verdict in its favor.  By carving out Ocean Wind 1, this Court essentially has afforded "a license for what now is willful infringement" in the public interest.  Broadcom Corp. v. Emulex Corp., No. SACV091058JVSANX, 2012 WL 13036855, at *9 (C.D. Cal. Mar. 16, 2012), aff'd, 732 F.3d 1325 (Fed. Cir. 2013).

It is difficult to understand why GE would continue to use the infringing patent if the costs of designing around it are as low as it represents them to be.  The parties have made it incredibly difficult to find common ground on whether a design-around would or would not best serve the public's interest.  On one hand, SGRE presents evidence that shows the Ocean Wind 1 project would have been dead in the water had the permanent injunction covered it.  Thus, by giving GE a license to infringe, GE ought pay SGRE adequately to minimize the irreparable harm it is causing.  On the other hand, GE claims it can easily design around the patent infringement, thus avoiding the need to pay a royalty.  GE's Reply 7.  But at what cost?  What would this design-around mean for the public interest?  These open-ended questions cause the Court to place SGRE and GE on roughly equivalent ground regarding their bargaining positions post-verdict.

[6]

## II. RESULTING CHANGES IN ECONOMIC CIRCUMSTANCES FROM THE DETERMINATION OF LIABILITY

### A. SGRE's Resulting Change in Economic Circumstances

SGRE explains that because the Court based its justification of irreparable harm to SGRE on the public interest, SGRE ought not bear the burden of "satisfying a countervailing public interest." SGRE's Brief 9. SGRE goes on to cite that "[a] trebled royalty rate of $90,000 per megawatt is consistent with SGRE's forecasted profit for a wind-turbine project." Id. citing Dkt. 404, Jury Trial Tr. (June 13, 2022) at 10-155:1-13. SGRE rationalizes its proposed $90,000 per M/W award by breaking down GE's financials brought up in the June 2022 trial:

> Unrebutted evidence adduced at trial proved that GE projected a profit margin of about $230,000 per megawatt. See Dkt. 405, Jury Trial Tr. (June 14, 2022) at 10:3-9, 14-16; id. at 31:22-23, 32:3-5, 34:12-16. Therefore, awarding SGRE $90,000 per megawatt would still leave GE with a profit margin of approximately $140,000 per megawatt for Ocean Wind 1, over 50% more profit than SGRE's projected profit.

Id. at 9. SGRE urges this Court to reject GE's changed economic circumstances arguments based off current events because GE has provided no projections to back up its vague assertions and profit projections, at least where the Haliade-X is concerned. Id. at 15.

[7]

**B. GE's Resulting Change in Economic Circumstances**

GE argues that current circumstances do not support increasing the royalty rate.  GE's Reply 6.  In support of this notion, GE points to the inapplicability of SGRE's analysis of a mid-2018 hypothetical negotiation due to the COVID-19 pandemic, inflation, and the Russia-Ukraine conflict.  Id.  GE contends that these current events have severely disrupted GE's offshore wind business to such a degree that GE's Renewable Energy Unit suffered a loss of $853,000,000 and a profit margin of negative 14.3 percent for the six months ending June 30, 2022.  Id. citing ECF No. 430 (GE Opposition to SGRE's Motion for a Permanent Injunction ("GE Injunction Opp.")) at 3-4, 18-19; GE 2Q 2022 10-Q Report at 10.

GE also reports losses specifically with respect to its Ocean Wind 1 Project.  Id.  GE first claims the world looked much different at the time that TSA was executed.  Id.  GE contends that uncompensated costs have shot up to 14.2 percent of the contract price, "making SGRE's assertions that "awarding SGRE $90,000 per megawatt would still leave GE with a profit margin of approximately $140,000 per megawatt for Ocean Wind 1" and "awarding SGRE $90,000 per megawatt still would leave GE with sizeable profits" (SGRE Br. at 9) categorically false." Id. citing Declaration of Christen Guthman, ¶¶ 11-15.  SGRE's proposed rate of $90,000 per M/W "would fundamentally undermine

[8]

the economics of the project and therefore threaten its viability -- a threat the carve out was intended to avoid due to "key" public interest considerations." Id. at 7.

### C. Weighing of Factors

While GE implies that a proposed royalty rate of $90,000 per M/W would threaten the Ocean Wind project's viability at risk of endangering this Court's desire to keep the public's interest at the forefront, these arguments are unpersuasive for several reasons.  First, the renewable energy profit losses reported by GE encompass its entire renewable energy department.  From GE's website, it is easy to find that the renewable energy department not only includes wind but also solar, hydro, and hybrid sectors.  GE Renewable Energy Home, GE Renewable Energy (Nov. 8, 2022, 1:32PM), https://www.ge.com/renewableenergy/home.  This Court has not been provided with specific figures on how offshore wind energy technologies have been affected by the global current events GE blames.

Second, GE's contentions that uncompensated costs for the Ocean Wind 1 Project have shot up to 14.2 percent of the contract price signifies very little to this Court due to GE's failure to provide evidence as to whether this increase in uncompensated costs is out of the foreseeable range of uncompensated costs in the world of TSA agreements of this

nature.  Christen Guthman's Declaration demonstrates only that the GE-Orsted agreement for the Ocean Wind 1 Project granted GE with escalation coverage for cost increases up to 10 percent of the price subject to escalation.  Decl. Christen Guthman Supp. Def. General Electric Company's Resp. to Pl. Siemens Gamesa Renewable Energy's Mem. Regarding The Royalty for the Ocean Wind 1 Project ("GE Declaration"), ¶¶ 12-13, ECF No. 486.  Guthman goes on to explain that using today's commodity costs the escalation coverage would only cover up to 4.9 percent of costs. Id. at 13.  The latest prices for commodity costs provided have no dates or explanation as to how common it is for these prices to fluctuate.  Id. at 12-13.  Furthermore, even a 4.9 percent coverage would leave GE responsible for covering an allegedly unanticipated 9.3 percent increase in costs considering the verdict and this Court's Carve Out in the public's interest.[1]

This Court cannot determine whether a 9.3 percent increase in costs from the original contract to present day threatens the economic validity of the project.  Moreover, this Court is not tasked with ensuring that GE retains all its originally anticipated profits.  The Court is tasked with making SGRE as whole as possible considering the Jury's verdict and the

---

[1]   9.3 percent is derived from the 4.9 percent of current commodity costs covered subtracted from 14.2 percent of contract price increases expected.

weighing of factors detailed in Amado. Amado 517 F.3d at 1362. GE provided this Court no detailed explanation as to specifically how this increase in uncompensated costs would render the project economically impracticable to a point where GE cannot bear its contractual burden of meeting the public interest as a post-verdict licensed infringer.  GE's Reply 6.

Third, GE's change of circumstances argument does not elucidate how COVID-19, the Russian-Ukraine conflict, and inflation specifically affected the Ocean Wind 1 Project's economic validity other than an increase in out-of-context uncompensated costs from the date of the TSA.

Finally, GE only reports past losses in its renewable energy department.  GE's Reply 6.  The Court is left with no specific information on what the future projections of the department are.

What is indubitably clear is that, by permitting GE to proceed on two offshore wind turbine projects notwithstanding the general injunction earned by SGRE, this Court is conferring on GE, a patent infringer, a significant if incalculable economic advantage.  GE will thus be able to build up relationships with reliable vendors and subcontractors, and work out supply chain issues -- in short, gain the advantage of learning how to address that myriad of issues that become

apparent only by actually building a project out.  GE ought pay for this privilege.

### III.    CONCLUSION

In light of these considerations, as a result of GE's obligation to meet the public interest as an infringer, joined with the fact that GE is now voluntarily infringing with the Court's permission, this Court decrees it must pay, as to the Ocean Wind I carve out, $60,000 per M/W to compensate SGRE most fairly for the irreparable harm it is causing.

For each infringing Haliade-X wind turbine installed at Ocean Wind 1 Offshore Energy Project, GE shall pay SGRE a royalty consisting of $60,000 per megawatt of rated capacity within 30 days after the end of the month in which the Haliade-X wind turbine is installed.  The judgment will be amended accordingly.

**SO ORDERED.**

/s/ William G. Young
WILLIAM G. YOUNG
JUDGE
of the
UNITED STATES[2]

---

[2] This is how my predecessor, Peleg Sprague (D. Mass. 1841-1865), would sign official documents.  Now that I'm a Senior District Judge I adopt this format in honor of all the judicial colleagues, state and federal, with whom I have had the privilege to serve over the past 44 years.